(No. 43292.—

*In re* HARRY PORCYNALEK HUTUL, Attorney, Respondent.

*Opinion filed March 20, 1973.—Rehearing denied June 1, 1973.*

WARD, J., took no part.

H. P. HUTUL, *pro se*, respondent.

JOHN CADWALADER MENK, of Chicago, *amicus curiae*.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is a disciplinary proceeding against the respondent under Supreme Court Rule 751 (Ill. Rev. Stat. 1967, ch. 110A, par. 751), wherein the sole meritorious issue is the measure of discipline to be imposed.

The cause comes before us on the report of the Grievance Committee of the Chicago Bar Association, which recommended that the respondent be disbarred, and the respondent's objections thereto. After a hearing on this report, the Board of Managers of the Chicago Bar Association, sitting as Commissioners, overruled the objec-

tions, approved the report and recommendation, and made its report to this court.

The recommendation was a consequence of the respondent's conviction in the United States District Court for the Northern District of Illinois, after a jury trial, on 9 of 15 counts charging him with specific acts of defrauding various insurance companies through use of the mails, and upon one count of conspiracy, in violation of sections 1341 and 371 of Title 18 of the United States Code.

The respondent was sentenced to concurrent prison terms of five years on each count on which he was convicted. The judgments of conviction were affirmed by the United States Court of Appeals for the 7th Circuit (*United States v. Hutul, 416 F.2d 607*), and petition for *certiorari* was denied (396 U.S. 1012, 24 L. Ed. 2d 504, 90 S. Ct. 573). Prior to his conviction in the United States District Court, he previously had been indicted and prosecuted by the State of Illinois, in the circuit court of Cook County, on substantially the same charges, and had been found not guilty.

The complaint of the Committee on Inquiry of the Chicago Bar Association against him recited his conviction in the United States District Court on the mail-fraud and conspiracy charges. After several hearings, Division IV of the Grievance Committee filed its report finding that the respondent had brought the legal profession into disrepute and recommended his disbarment. He filed objections to this report and filed a motion in this court to strike his name from the roll of attorneys. The clerk of this court, upon our suggestion, advised the Chicago Bar Association of the filing of this motion and requested its response. The Association advised us that a final hearing was scheduled before the full Grievance Committee and asked that the respondent's motion be continued so that proper consideration could be given to his request. The full Grievance Committee, sitting as Commissioners of this court, met on the scheduled date and without the respondent's appear-

ance approved the report and the recommendation of disbarment.

Thereupon, the Chicago Bar Association filed with the clerk of this court certain "Suggestions to the Court" which described what had happened and suggested that the respondent's motion be held in abeyance pending receipt of the final report of the Board of Managers of the Association, which report was subsequently received.

Thereafter, *amicus curiae* filed a motion with the court to approve and confirm the report of the Commissioners recommending the respondent's disbarment. While incarcerated in the Federal Correctional Institution at Sandstone, Minnesota, the respondent wrote to the court and requested that his letter be considered as his objections to the Commissioners' report, and that the matter be stayed until his release from Federal custody. We allowed his request and continued the motion by *amicus curiae* to approve and confirm the Commissioners' report.

Upon the respondent's release on parole from Federal custody, his matter was reactivated. In addition to his letter of objections, the respondent later filed, on his own behalf, the common-law record of the circuit court of Cook County in the criminal case wherein he was found not guilty of the fraud and conspiracy charges; a copy of his letter to the Hon. William J. Lynch, Judge of the United States District Court, who presided in the proceeding wherein he was found guilty of mail fraud and conspiracy; and a copy of his petition for a writ of *certiorari* to the United States Supreme Court, which has now been denied.

The respondent has two basic objections to the report. First, he claims that he was placed in double jeopardy by the Federal prosecution which occurred after he had been found not guilty in a State prosecution for similar charges, and contends that this constitutes a violation of his rights under the fifth amendment to the United States constitution. He additionally urges that if the second prosecution

was not barred by double jeopardy, it was barred by the principles of collateral estoppel or *res judicata,* and by the seventh amendment.

This identical argument was made by the respondent in his appeal to the United States Court of Appeals for the 7th Circuit (*United States v. Hutul, 416 F.2d 607*). In answering this contention, we adopt that part of the decision of that court which, at page 626, states:

"First, the principles of res judicata and collateral estoppel act as a bar to subsequent proceedings only when the parties to each action are the same, and the Federal Government is neither the same as nor in privity with that of the State of Illinois. See United States v. Wapnick, 198 F. Supp. 359 (D.C.E.D. N.Y. 1961), aff'd. per curiam, 315 F.2d 96, cert. den. 374 U.S. 829, 83 S. Ct. 1868, 10 L. Ed. 2d 1052; Rios v. United States, 256 F.2d 173 (9th Cir. 1958). Therefore, the principles of res judicata and collateral estoppel do not apply to the case at bar, and do not provide a substitute for a defense of double jeopardy.

Second, the Seventh Amendment is inapplicable to the instant case since it applies only to civil suits, not criminal.

Finally, we reject defendant Hutul's contention that his prosecution was without Government authority and therefore void."

Also see: *One Lot Stones v. United States (1972), 409 U.S. 232, 34 L. Ed. 2d 438, 93 S. Ct. 489; Abbate v. United States (1959), 359 U.S. 187, 3 L. Ed. 2d 729, 79 S. Ct. 666.* We, therefore, find that the resondent's contention in this regard is without merit.

The respondent next asserts that the disciplinary penalty of disbarment recommended by the Board of Managers is unjustifiably severe when considered in the light of his experiences in twice defending himself against

the charges on which he was ultimately convicted, and particularly because his first defense thereto in the circuit court of Cook County was successful. He has maintained throughout the criminal proceedings that he was innocent of the charges brought against him, and has continued to do so in this disciplinary proceeding. He has asked this court, in measuring the discipline to be imposed, to look behind his conviction, into his conduct and the facts and circumstances which led to the charges brought against him in his two trials. He urges, either as grounds for disapproval of the Commissioners' report or in mitigation of the discipline to be imposed, that we consider that he was originally found not guilty in the State court and suffered the attendant difficulties of such experience, as well as the exposure to the accompanying adverse publicity of that trial and his subsequent Federal trial and conviction; and that he was released on parole after serving only 21 days more than the minimum Federal sentence. We are not without compassion for the respondent because of the distressing situation which engulfs him, but we cannot overlook the fact that his burdened circumstances and his conviction were the inevitable consequence of his own deeds.

We recognize that while the respondent's conviction is conclusive evidence of his guilt (*In re Fumo, (1972), 52 Ill.2d 307, 309*), it does not preclude consideration of other evidence for the purpose of determining the appropriate disciplinary action. (*In re Fumo (1972), 52 Ill.2d 307, 310; In re Crane (1961), 23 Ill.2d 398, 401-402.*) The matters to be considered by the court in a disciplinary proceeding were delineated in the case of *In re Crane (1961), 23 Ill.2d 398, 400-401,* as follows:

> "While the conviction is conclusive evidence of guilt, it does not preclude the consideration of other evidence for the purpose of determining the appropriate disciplinary action. After all, a respondent is being disciplined not because of his

conviction but because of his conduct. The actual conduct itself is certainly revelant to a determination of the appropriate discipline to be accorded. Just as every conviction of a crime does not require the same punishment, so all convictions of crimes involving moral turpitude do not require the same discipline. Thus, a consideration of the actual conduct of the respondent is not only proper, but may be indispensable, to an informed appraisal of the appropriate disciplinary action."

Therefore, we have considered the conduct of the respondent which resulted in his conviction, as well as the other factors which he has called to our attention.

The respondent was convicted by a jury in the United States District Court of defrauding various insurance companies through the use of the mails, and for conspiring to do so. The proof showed that the frauds occurred as a result of the respondent joining with several other individuals—purported clients—in collecting claims for lost wages allegedly incurred as a consequence of injuries sustained in six fictitious automobile "accidents." The mails were used to transmit proof of damages to the insurance companies involved. Again, we may appropriately refer to the opinion of the United States Court of Appeals, at pages 615 and 616, in describing the respondent's conduct:

"This defendant served as attorney for all claimants in each accident. He knew Lombardi and Basan, yet represented them as claimants in accident No. 2, where they assumed the names of Victor Gattling and Burton Orwitz respectively. Similarly, Hutul knew Mitchell, yet represented her as Laura Young and Basan as Herbert Schwerdlin in accident No. 1. Hutul's involvement in the accidents, his representations as to the identity and employment of the claimants, and his presence during various interviews and

depositions are adequately recited in the summary of the accidents.

Moreover, Hutul was intimately connected with Sacks and White Vending Company and admitted knowing that Leonard Anglin, in accident No. 6, was the name of Sacks' brother-in-law and that the address given for Anglin was Sacks'. Hutul also knew that the address given for John Lenard in accidents No. 5 and No. 6 was Sacks'. Hutul represented numerous claimants as employees of White Vending in 1959 and sued two other alleged White employees that year; yet he helped Sacks answer an interrogatory in 1961 which stated that White employed only four people in 1959.

Hutul's claim of innocent reliance on the representation made by the 'employers' on the lost wages statements allegedly mailed by him to them was disproven at trial. Two of the alleged employers, Ralph Losito (accident No. 2) and the Ioscos (accident No. 1), testified that they never received any correspondence from Hutul regarding the accidents. This is in addition to the fact that Hutul personally knew many of the alias claimants. The obvious conclusion is that Hutul never sent the statements to the alleged 'employers' but either filled them out himself or in cooperation with the other parties to the conspiracy."

Thus, it is clear that the respondent's conduct in this series of frauds upon insurance companies, which resulted in the payment of substantial sums of money to him and his "clients," was calculated, knowing and deliberate. His insistence upon his innocence in the face of the evidence adduced at his trial in the United States District Court strains the credulity of this court.

In a recent and similar series of frauds brought to our

attention in a disciplinary proceeding, which also involved a conviction under section 1341 of Title 18 of the United States Code, we found disbarment to be the appropriate disciplinary penalty. (*In re Fumo (1972), 52 Ill.2d 307.*) We find no reason to alter that penalty in this case.

Therefore, the findings and report of the Commissioners is approved and the respondent's name is stricken from the roll of attorneys of this court.

*Respondent disbarred.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.