CARL M. HERZOG, Plaintiff-Appellant, v. LEXINGTON TOWNSHIP, Defendant-Appellee.

Fourth District   No. 4—92—0215

Argued September 22, 1993.—Opinion filed October 14, 1993.—
Rehearing denied February 23, 1994.

338

McCULLOUGH, J., dissenting.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (John L. Morel (argued), of-counsel), for appellant.

Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria (Paul P. Gilfillan (argued), of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Carl Herzog, was the driver of a car involved in a single-car accident on a Lexington Township road. As a result of the accident, Herzog suffered injuries requiring hospitalization and surgery. Herzog filed suit against Lexington Township (Lexington) alleging Lexington was negligent in failing to identify and advise motorists of the number and severity of the curves on the Lexington Township road and the speed at which they could safely be travelled. Herzog alleged his accident occurred as a result of Lexington's negligence. After a jury trial, a verdict was entered in favor of Lexington. Herzog appeals; we reverse and remand for a new trial.

## I. BACKGROUND

Herzog's accident occurred on November 23, 1985, on the Pine Street Extension in Lexington Township. Pine Street is a street within the city limits of Lexington; outside the city limits, Pine Street becomes a country blacktop road, which was referred to as the "Pine Street Extension" throughout the proceedings. There was no speed limit posted on the Pine Street Extension; however, it is uncontroverted that as an unposted rural blacktop road, the speed limit is 55 miles per hour.

About one-half mile south of the city limits of Lexington there is a hill followed by a series of "changes in alignment." The first change in alignment is a "curve" bearing to the left, the second change in alignment is a "turn" to the left, and the third change in alignment is a "curve" to the right. A "curve" is a change in the alignment of the roadway which may be safely travelled at more than 30 miles per hour. A "turn" is a change in the alignment of the roadway which may be safely travelled only at a speed less than 30 miles per hour. Prior to the first change in alignment there was a "winding road" sign. There were no advisory speed plates or other warning signs posted on the Pine Street Extension.

Herzog does not remember the moments immediately preceding the accident. The four passengers in the car testified regarding their recollections of the accident. The passengers' estimates of the automobile speed at the time of the accident were 40 to 45, 45 to 50, 50 to 60, and 35 to 40 miles per hour. There were no distractions in the car immediately prior to the accident. However, the radio or cassette was playing. Herzog lost control of the car on the turn to the left, and the car left the road, rolled, and came to rest in a field.

Prior to the Herzog accident, there had been two other single-car accidents at the same location. Three weeks after the Herzog accident occurred, there was another single-car accident at the same location. This later accident was the subject of litigation in *Johnson v. O'Neal* (1991), 216 Ill. App. 3d 975, 576 N.E.2d 486. Two days after the Johnson accident, Randy Patton, the Lexington Township road commissioner, conferred with Herb Bekermeier, the McLean County highway superintendent, regarding his safety concerns. A township road commissioner is not required to be a registered professional engineer; however, the county superintendent of highways is a registered professional engineer. Whenever the township road commissioner needs the expertise of an engineer or wishes to erect a sign, he makes a request to the county superintendent of highways.

As a result of Patton's consultation with Bekermeier, Bekermeier instructed Ken Hart, a sign foreman at the McLean County highway department, to conduct ball bank indicator tests to determine the speed at which the curves could safely be travelled. Hart had been performing ball bank indicator tests for the county since 1984. Where the results of his tests indicated the changes in alignment could only be travelled at speeds less than the speed limit, the county posted advisory speed plates. Hart had also performed tests for other townships, but prior to December 1985, had not performed tests for Lexington Township.

On December 17, 1985, Hart, accompanied by Patton, performed ball bank indicator tests on the Pine Street Extension. His tests indicated the first change in alignment could be safely travelled at 35 miles per hour, the second at 15 miles per hour and the third at 25 miles per hour. As a result of these tests, at least five additional signs were placed on the Pine Street Extension.

Prior to trial, Lexington filed a motion *in limine*, requesting plaintiff be barred from introducing evidence regarding the additional signs, under the subsequent remedial measures doctrine. The motion was granted and at trial plaintiff was prevented on several occasions from pursuing lines of questioning relating to the erection of the addi-

tional signs. Also, prior to trial, plaintiff filed a "motion for collateral estoppel," seeking to estop Lexington from relitigating issues already determined in *Johnson* regarding the adequacy of the signs present on the Pine Street Extension in 1985 and Lexington's negligence. The motion was denied.

Both plaintiff and defendant presented evidence regarding the safety of the road and the adequacy of the winding road sign in place at the time of the accident. Plaintiff's expert, Dr. John Baerwald, a civil engineer, doctor of philosophy and traffic engineering authority, testified in his opinion the winding road sign in place at the time of the accident was "grossly inadequate" for the condition of the road. Baerwald testified he conducted ball bank indicator tests to determine the speeds at which the curves and turns could safely be travelled. He testified the first change in alignment could safely be travelled at 35 miles per hour, but the second could only be safely travelled at 25 miles per hour.

In the present case, instead of the winding road sign, Baerwald testified a curve sign with a 35-mile-per-hour speed advisory plate should have been erected. On the second change in alignment, a reverse turn sign with a 25-mile-per-hour speed advisory plate should have been erected. Baerwald would also recommend the use of a large arrow sign on the first change in alignment and three chevrons along the second change in alignment to give positive guidance to the driver throughout the turn.

Detective Jeff Elston testified on behalf of the defendant. Elston testified the Pine Street Extension was an unposted 55-mile-per-hour speed zone. However, on cross-examination, the detective testified the changes in alignment could not be safely travelled at 55 miles per hour.

Randy Patton testified as a witness for the defense. Patton is a full-time farmer, with a high-school education, and is the Lexington Township road commissioner. Patton testified he had no knowledge of prior accidents and did not know the county had ball bank indicators until after this accident. Although not disclosed as an expert, Patton rendered what was essentially expert testimony on behalf of the defense. Over plaintiff's objection, Patton testified on his opinion, *i.e.*, the winding road sign was correct for the condition of the road. Patton additionally testified in his opinion, traffic was capable of moving safely through the changes in alignment.

On cross-examination Patton testified he had no engineering education, no formal training for his job, and had attended no seminars on traffic-control devices. Patton further testified he knew the Manual

on Uniform Traffic Control Devices existed; however, he had never read it. Patton did not know the requirements for the use of a turn sign, curve sign, arrow sign, advisory speed plates or chevrons.

After the accident in December 1985, Patton requested the county to send out a "sign man" to examine the Pine Street Extension. Defendant objected to this line of questioning and no further questions were permitted on this subject.

Herb Bekermeier testified as a witness for the defense. Bekermeier was the county superintendent of highways at the time of the accident. In 1981, Bekermeier approved the placement of the winding road sign on the Pine Street Extension. Bekermeier stated the township had no obligation to erect such a sign; however, if it was erected, it had to conform to the Manual on Uniform Traffic Control Devices.

Although not disclosed as an expert, Bekermeier rendered what was essentially expert testimony on behalf of the defense. Over plaintiff's objection, Bekermeier testified that in his opinion the winding road sign was adequate for the conditions and traffic was capable of moving safely through the curves. On cross-examination, Bekermeier stated the road could be safely negotiated even *without* the winding road sign.

Also on cross-examination Bekermeier stated the winding road sign did not depict the actual configuration of the changes in alignment; however, there was no one sign which did depict this configuration. Bekermeier admitted in proper circumstances there is a series of signs which would depict the configuration. Bekermeier was aware of the usage of curve and turn signs. Bekermeier testified the county had ball bank indicators at least since 1974, and the ball bank indicators were purchased specifically for the purpose of checking the safe travelling speed of curves. The county used the ball bank indicators to run speed tests and put up speed advisory signs. The ball bank indicators were made available to the townships upon request.

Bekermeier testified that after the December 1985 accident, he was approached by Patton. They were concerned from a safety standpoint and wondered what could be done. They discussed signs and thought the one sign was adequate, but decided to use the ball bank indicator to run tests to determine whether advisory speed plates were necessary. Defendant objected to this line of questioning and no further questions were asked.

The jury found Herzog's negligence to be the sole proximate cause of his injuries and a verdict was entered in favor of Lexington. In his post-trial motion, Herzog raised numerous allegations of error, two of which were that the circuit court erred in denying his motion

for collateral estoppel and in refusing evidence of subsequent remedial measures to be used for impeachment purposes. The post-trial motion was denied and this appeal followed. We agree with Herzog regarding these two allegations of error and therefore reverse and remand for a new trial.

## II. COLLATERAL ESTOPPEL

Herzog alleges the circuit court erred in denying his motion to collaterally estop Lexington from relitigating issues which, he alleges, were resolved against Lexington in *Johnson*. Specifically, Herzog alleges Lexington should have been collaterally estopped from litigating whether (1) Lexington failed to advise motorists of the number and severity of the curves on the Pine Street Extension; (2) it failed to advise motorists of the speed at which these curves could safely be travelled; (3) it was negligent; and (4) its negligence was a proximate cause of his injuries. We agree with Herzog that the first two issues were resolved against Lexington in *Johnson* and the motion for collateral estoppel should have been granted with respect to these issues. However, we do not find the issues of negligence and causation to be identical with respect to both the Herzog and Johnson accidents; accordingly, we find the trial court properly denied the motion for collateral estoppel with respect to those issues.

■ The doctrine of collateral estoppel may be applied to prevent a party to distinct lawsuits from relitigating an issue which has already been resolved by the court. (*Housing Authority v. Young Men's Christian Association* (1984), 101 Ill. 2d 246, 252, 461 N.E.2d 959, 962.) Most frequently collateral estoppel is invoked by a defendant to prevent a plaintiff from relitigating issues which the plaintiff has already litigated and lost in a lawsuit against another individual or entity. However, collateral estoppel may also be invoked offensively by the plaintiff. The party seeking the application of the doctrine of collateral estoppel has the burden of proof in establishing the propriety of its application. (*Claiborne v. Hutchinson* (1978), 67 Ill. App. 3d 374, 377, 385 N.E.2d 29, 32.) The doctrine of collateral estoppel may be invoked when (1) the issue in the former case and pending case is identical; (2) a final judgment on the merits has been reached by a court of competent jurisdiction in the cause asserted as a bar; and (3) the party against whom the estoppel is asserted is the same party or in privity with a party in the first cause and has had a full opportunity to litigate the issue or question. *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 895, 588 N.E.2d 1193, 1201-02.

Plaintiff contends several issues in the present case had already been determined against Lexington in *Johnson*. In *Johnson*, plaintiffs' decedent was a passenger in an automobile driven by Michael O'Neal. On December 13, 1985, three weeks *after* Herzog's automobile accident, O'Neal drove his automobile southbound on the Pine Street Extension. O'Neal's automobile left the road at the same spot where Herzog's automobile left the road, the second change in alignment after the crest in the hill. O'Neal, Johnson, and one other passenger were killed. The fourth passenger was injured. Johnson's parents and estate (Johnsons) brought suit against the estate of O'Neal (O'Neal) and Lexington Township. The Johnsons alleged O'Neal was negligent in operating his automobile and Lexington Township was negligent in failing to warn motorists of the severity of the curves on the Pine Street Extension and the speed at which they could safely be managed. Throughout the proceeding, Lexington maintained the sole proximate cause of the accident was O'Neal's negligence.

The Johnsons entered into a settlement with O'Neal. O'Neal paid the Johnsons $300,000 and loaned the Johnsons $300,000, to be repaid only to the extent that a greater sum was recovered from Lexington Township. O'Neal remained a party to the lawsuit. After trial, the jury entered a verdict in favor of the plaintiffs and against both defendants in the amount of $250,000. Due to the terms of the settlement with O'Neal, Lexington was not required to pay plaintiffs any money. Lexington filed a motion *inter alia* requesting a judgment *n.o.v.*, which was denied. The case was appealed by plaintiffs on other grounds and affirmed by this court.

Herzog filed a motion to estop Lexington Township from relitigating matters he alleged had been determined in *Johnson*. In his motion for collateral estoppel, Herzog alleged: (1) the complaint in *Johnson* was the same as his complaint; (2) both he and Johnson alleged Lexington to be responsible for the same acts or omissions, namely it failed to advise motorists of the number and severity of the curves on the Pine Street Extension and the speed at which they could safely be travelled; (3) both the *Johnson* accident and his accident occurred in the same location, when the road was in the same condition and configuration, and while the same signs were present in the same locations; (4) Lexington had the opportunity to litigate its negligence; (5) the jury in *Johnson* considered all pertinent issues and found against Lexington; and (6) the judgment in *Johnson* had become final. Due to the identity of the pertinent issues in *Johnson* and his case, Herzog requested the court to prevent Lexington from relitigating issues already resolved and find the following as a matter of law: (1) Lexing-

ton Township failed to correctly identify and advise the motoring public of the number and severity of the curves in the road; (2) Lexington Township failed to advise the motoring public of the speed at which the curves could be safely travelled; (3) Lexington Township is negligent; and (4) the negligence of Lexington Township was a proximate cause of his injuries. In oral argument on the motion on November 8, 1991, plaintiff primarily concentrated on the first two allegations. The motion was denied.

### A. *Does a Party's Failure to Appeal Preclude Offensive Use of Collateral Estoppel?*

At issue on appeal is whether Lexington had the opportunity to fully litigate the issues in the previous case and whether the issues in the cases are identical. Lexington contends it should not be bound by the determination of its liability in *Johnson*, because it did not have an opportunity to raise its immunity and lack of duty arguments on appeal. In *Johnson* the trial court entered judgment on a verdict against Lexington and O'Neal. Under the terms of the pretrial settlement agreement between Johnson and O'Neal, the O'Neal settlement satisfied the entire judgment. Lexington essentially argues because it did not have to satisfy the judgment, it had no reason to appeal the determination of its liability and assert its theories in a court of review. Therefore, it contends, since it did not raise these theories to a court of review, it cannot be bound by the jury's determination of its negligence in *Johnson*.

■ A party cannot be bound by the decision where it could not appeal, for example, where it was the prevailing party. (See *White v. Elrod* (7th Cir. 1987), 816 F.2d 1172, 1174, *cert. denied* (1987), 484 U.S. 924, 98 L. Ed. 2d 246, 108 S. Ct. 286.) A party cannot appeal a ruling in its favor. However, in *Johnson*, Lexington was not the prevailing party. A judgment was entered *against* Lexington. Lexington had the opportunity to seek review on these issues; however, Lexington made a strategical decision not to appeal. Lexington is, therefore, bound by the trial court's determinations in the *Johnson* case. We decline to abrogate the doctrine of collateral estoppel by carving out an exception which effectively states if a litigant has no immediate financial incentive to appeal a judgment, it may *choose* not to do so but still avoid the effect of collateral estoppel. Moreover, at the time Lexington elected not to appeal the circuit court's determination of its liability—based on allegations of the inadequacy of its posted signs—it had knowledge this case, dealing with the same issues, was pending. Since Lexington was found liable in *Johnson*, it should have known it would

be bound by this determination in later cases. Had Lexington believed the determination of its liability was in error, it should have appealed.

### B. Does Supreme Court's Opinion in West Preclude a Determination of Liability?

Defendant next argues that under the recent supreme court decision in West v. Kirkham (1992), 147 Ill. 2d 1, 588 N.E.2d 1104, decided after Johnson, it cannot be held liable for failure to post adequate signs. This raises the interesting issue of whether a party may cite an after-decided case to evade the effect of collateral estoppel. However, the court need not decide this issue because, since West determined the effect of the version of section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) as amended in 1986 (see Ill. Rev. Stat. 1987, ch. 85, par. 3—104), it is not helpful in determining a township's immunity in 1985.

At the time of the Johnson and Herzog accidents, section 3—104 of the Act provided:

"(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs.

(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." (Ill. Rev. Stat. 1985, ch. 85, par. 3—104.)

In 1986, the legislature revised section 3—104, repealing subsection (b) in its entirety and expanding the coverage of subsection (a). See Pub. Act 84—1431, art. I, §2, eff. November 25, 1986 (1986 Ill. Laws 3740, 3744).

In West the supreme court determined, under section 3—104 of the Act as it existed after the 1986 amendment, a local public entity does not have a duty to provide traffic control devices. (West, 147 Ill. 2d at 14, 588 N.E.2d at 1110.) The West court distinguished the status of the law before and after the 1986 amendment. Specifically, the court stated, "[t]hus, under subsection (b) of the predecessor version of section 3—104, it was possible to hold a municipality liable for the failure to provide a traffic warning sign or device if such was 'neces-

sary to warn of a condition which endangered the safe movement of traffic.' " (Emphasis in original.) *West*, 147 Ill. 2d at 8, 588 N.E.2d at 1107.

■■ Lexington's reliance on *West* as its salvation from liability is, therefore, clearly misplaced. *West* does not, as defendant alleges, "all but obliterate plaintiff's theory of liability against defendant." On the contrary, *West reinforces* the plaintiff's theory that prior to 1986, a local public entity could be liable for failure to provide signs where necessary to warn of a condition which endangered the safe movement of traffic and was not apparent to a driver exercising reasonable care. Since the *West* case does not change the law in effect at the time of the Herzog accident, it does not act as a bar to the application of collateral estoppel.

## C. *Are the Issues Identical so as to Permit Offensive Use of Collateral Estoppel?*

■■ The issues of whether Lexington failed to advise drivers of the number and nature of the changes in alignment, and the speed at which they could safely be travelled are identical to those litigated in *Johnson*. However, whether Lexington was negligent in the Johnson case and in the Herzog case are distinct issues. Likewise, whether Lexington's failure to post adequate signs was the proximate cause of Johnson's injuries and whether it was the proximate cause of Herzog's injuries are distinct issues.

### 1. Plaintiff's Allegation Nos. (1) and (2), Failure to Identify and Advise

The issues of whether Lexington failed to advise drivers of the number and severity of the changes in alignment and the speed at which they could be traveled were litigated in *Johnson*. In *Johnson*, the plaintiff alleged, "the township (1) failed to correctly identify the number of curves in the road, (2) failed to post a safe speed or reduce the speed limit on the road in the area where the accident occurred, and (3) failed to advise motorists of the severity of curves in the road and the speed at which the curves could be safely traveled." (*Johnson*, 216 Ill. App. 3d at 977, 576 N.E.2d at 488.) Evidence was taken on these issues and the jury resolved them against Lexington, ultimately entering a verdict against Lexington. The *Herzog* and *Johnson* cases are remarkably similar. Both cases involved a single-car accident at exactly the same location. The accidents occurred within weeks of each other. In both cases, Lexington raised the affirmative defense that the accident was due to the negligence of the driver. Since the

issues of Lexington's failure to identify and advise motorists of the curves were previously determined against Lexington in *Johnson*, the trial court in this case should have granted the plaintiff's motion to collaterally estop Lexington from relitigating the issue of whether the signs in place at the time of the accident were proper given the conditions of the road. The trial court should have then instructed the jury that Lexington failed to identify and advise motorists of the number and severity of the changes in alignment and the speed at which they could safely be travelled.

## 2. Plaintiff's Allegation No. (3), Negligence

Herzog requested the court to find Lexington was collaterally estopped from litigating the issue of its negligence based on the jury's determination of Lexington's negligence in *Johnson*. The issue of whether Lexington was negligent in December 1985, the date of the Johnson accident, is *not* identical to the issue of whether Lexington was negligent in November 1985, the date of the Herzog accident. This is primarily because this Herzog accident occurred three weeks prior to the Johnson accident. In *Johnson*, the jury heard testimony regarding the occurrence and date of the Herzog accident, and could have concluded the Herzog accident put Lexington on notice of the dangerous condition of the road and inadequacy of the signs, and, therefore, found Lexington's failure to erect additional signs to be negligence. Since the issue of Lexington's negligence in this case was not identical to the issue of Lexington's negligence in *Johnson*, the trial court properly denied plaintiff's motion to collaterally estop Lexington from litigating this issue.

## 3. Plaintiff's Allegation No. (4), Proximate Cause

Whether the lack of adequate signs was a proximate cause in the Johnson accident is *not* identical to whether the lack of signs was a proximate cause in the Herzog accident. The determination of proximate cause involves a factual and legal inquiry into the *particular* facts and circumstances involving the *individual* accident. Clearly the specifics of the Herzog accident were not litigated in *Johnson*.

## 4. Summary

In conclusion, the trial court erred in denying plaintiff's motion to collaterally estop Lexington from relitigating the issues regarding the failure to warn of the number and severity of the changes in alignment in the road and the speed at which they could safely be travelled. The trial court properly denied plaintiff's motion to collaterally

estop Lexington from litigating issues regarding its negligence in this case and the proximate cause of Herzog's accident.

### III. SUBSEQUENT REMEDIAL REPAIRS EVIDENCE

We turn now to the second allegation of error, that the circuit court erred in refusing to admit evidence of subsequent remedial measures for impeachment purposes. Shortly after the Herzog and O'Neal accidents, Lexington erected additional signs and advisory speed plates on the changes in alignments in question. A speed advisory plate was added to the winding road sign. A curve sign and a speed advisory plate were put up on the first change in alignment, the curve. A reverse turn sign and an advisory speed plate were put up on the second change in alignment, the turn. It is not clear from the record whether other additional signs were erected on these or the third change in alignment.

Lexington moved *in limine* to bar testimony regarding the additional signs under the subsequent remedial measures doctrine. The court granted the motion. Since Patton and Bekermeier, two of the individuals responsible for the placement of the additional signs and advisory plates on the Pine Street Extension, testified in their expert opinions, the signs as they existed on the date of Herzog's accident were adequate, Herzog alleges evidence of the additional signs should have been admissible for impeachment. Herzog did not preserve this issue by making an offer of proof and it is therefore waived. However, we elect to discuss the merits of his argument since the same issue is likely to be present on retrial.

Evidence of subsequent remedial measures is inadmissible to prove negligence or culpable conduct. The rationale for this rule is twofold. First, a strong public policy exists in favor of encouraging improvements to enhance safety. The inadmissibility of subsequent remedial measures ensures a defendant will not delay making a repair merely because a lawsuit is threatened or pending and the defendant does not want evidence of the repair to be used as proof of prior negligence. (See generally *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 318-19, 281 N.E.2d 749, 752.) Second, a subsequent remedial measure is not probative of prior negligence because later carefulness does not necessarily imply prior neglect. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 14, 541 N.E.2d 643, 648.) However, evidence of subsequent remedial measures is admissible for other purposes, such as to prove feasibility of precautionary measures or impeachment. *Lewis v. Cotton Belt*

*Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 107, 576 N.E.2d 918, 929.

Plaintiff contends evidence of the additional signs should have been admitted to impeach the testimony of two defense witnesses. Although not disclosed by plaintiff as expert witnesses, Patton and Bekermeier gave what was essentially expert testimony on behalf of the defendant. Both Patton and Bekermeier testified, in their opinions, the winding road sign present on the night of the accident was proper for the conditions of the road. The witnesses additionally testified in their opinions, on the date of the accident, traffic was capable of moving safely through the roadway. Ironically, the witnesses who testified one sign was adequate to warn of the conditions and the road could be safely travelled were the individuals responsible for erecting not one but *at least five* additional signs.

Defendant contends if the court permits evidence of the subsequent remedial measures to be admitted to impeach the witnesses in this case, it would be allowing the impeachment exception to swallow the general inadmissibility of subsequent remedial repairs. Thus, defendant argues, where a defendant exhibited "later carefulness," such acts could be introduced against it at trial.

■■ In resolving this issue the court must balance competing concerns. On one hand, the inadmissibility of subsequent remedial measures stems from a public policy in favor of encouraging correction of an unsatisfactory condition. However, impeachment is a recognized exception to the general rule of inadmissibility of subsequent remedial measures. In the present case, defendant *invited* the introduction of the subsequent remedial measures by eliciting quasi-expert opinions, that one sign was adequate and the road could safely be travelled, from the two people responsible for erecting at least five additional signs. Under these circumstances the subsequent remedial measures would not be admitted to show negligence, but rather on the issue of the credibility of the witnesses rendering these opinions. We believe the trial court erred in preventing plaintiff from exploring these areas on cross-examination.

### IV. Conclusion

Since we determine the trial court erred in denying plaintiff's motion for collateral estoppel on the issue of adequacy of the signs, and in refusing evidence of subsequent remedial measures for impeachment purposes, we need not address Herzog's other numerous allegations of error.

The circuit court of McLean County is reversed and this matter is remanded for a new trial.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I respectfully disagree with the majority as to the issues of the effect of *West*, collateral estoppel, and evidence of impeachment of Bekermeier and Patton.

*West* effectively disposes of any right to recovery. In discussing signage, the supreme court stated:

"Excessive regulation, with no corresponding gain in safety, convenience or cost efficiency, would be the natural result. The legislature recognized this by enacting section 3—104 and expressly immunizing the failure to provide a traffic control device or sign." (*West*, 147 Ill. 2d at 12, 588 N.E.2d at 1109.)

That Lexington had "initially" placed a sign does not require a different result. In reviewing the appellate court decision in *Smith v. County of White* (1989), 191 Ill. App. 3d 569, 548 N.E.2d 19, the supreme court also said:

"The court determined that the plaintiff's claim therefore was not premised on an 'initial' failure to provide. (*Smith*, 191 Ill. App. 3d at 577.) As noted, we disagree with the conclusion that section 3—104 may be circumvented by such reasoning. Thus, to the extent that the holding in *Smith* conflicts with this opinion, it is overruled." *West*, 147 Ill. 2d at 11, 588 N.E.2d at 1109.

Any agreement that section 3—104(b) of the Act requires a different decision is likewise without merit. (Ill. Rev. Stat. 1985, ch. 85, par. 3—104(b).) Section 3—104(b) does not apply. That section deals with immunity for failure to provide warning signals, etc., necessary to warn of a "condition" of the road. Plaintiff did not allege any condition of the road itself, *i.e.*, flooding, road repair.

As to collateral estoppel, plaintiff's motion concerned matters alleged to have been determined by the court in *Johnson*. It was not feasible for the defendant to appeal in *Johnson*. The trial court in *Johnson* allowed the township's post-trial motion for setoff against the verdict returned against it. It also ruled the township's motion requesting a setoff against any *additur* was moot. The ruling in favor of Lexington on its motion for setoff puts it in the position of a pre-

vailing party. In reviewing our decision in *Johnson,* any appeal by Lexington would have been added expense, fruitless, and could very well have been considered moot. There was no reason to further litigate and I agree with defendant it should not be bound by the *Johnson* court's determination of negligence.

In *Johnson,* the plaintiff was a passenger, while here the plaintiff was the driver. This presents entirely different issues as to negligence of the respective plaintiffs and certainly proximate cause.

The majority assumes that in *Johnson* the jury verdict determined defendant (1) failed to correctly identify the number of curves in the road, (2) failed to post a safe speed or reduce the speed on the road in the area where the accident occurred, and (3) failed to advise motorists of the severity of the curves in the road and the speed at which the curves could be safely travelled. The verdict in *Johnson* did not necessarily find for plaintiff in all of these matters. The majority does find the trial court was correct in denying collateral estoppel as to negligence and proximate cause. This determination is reason in itself to affirm the trial court's ruling on plaintiff's motion. The issues decided in *Johnson* are not necessarily a judgment on the merits on issues in this case.

Plaintiff alleged negligence. The evidence of the subsequent remedial measures was not admissible. In *Schaffner,* the evidence found to be inadmissible in a wilful and wanton count concerned defendant's post-accident replacement of the Central Avenue crossing. The supreme court said, "The same policy considerations that militate against admission of that evidence as proof of negligence, discussed earlier, counsel against its admission as proof of willful and wanton misconduct." (*Schaffner,* 129 Ill. 2d at 17, 541 N.E.2d at 649.) The *Lewis* case involved a factual background not present in this case. The *Lewis* court found the impeachment evidence was admissible to show "defendant was straying from its usual and customary practice." *Lewis,* 217 Ill. App. 3d at 108, 576 N.E.2d at 930.

The evidence sought to be presented violates the same policy considerations referred to in *Schaffner.* The prejudice outweighs the probative value. To allow the evidence on the basis of impeachment will effectively eliminate subsequent remedial repairs as well as rationale set forth in *Schaffner,* " 'later carefulness does not necessarily imply prior neglect.' " *Schaffner,* 129 Ill. 2d at 14, 541 N.E.2d at 648, quoting *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 252, 417 N.E.2d 154, 161.

The trial court's order should be affirmed.