(No. 77037.—

CARL M. HERZOG, Appellee, v. LEXINGTON TOWNSHIP, Appellant.

*Opinion filed October 19, 1995.*

290

HARRISON, J., dissenting.

Quinn, Johnston, Henderson & Pretorius, Chrtd., of Peoria (Paul P. Gilfillan, of counsel), for appellant.

John L. Morel, of Bloomington, for appellee.

Judge & James, Ltd., of Park Ridge (Jay S. Judge, Kathryn James Anderlik and Gregory R. James, Jr., of counsel), for *amicus curiae* Illinois Governmental Association of Pools.

Bruce Robert Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE NICKELS delivered the opinion of the court:

This is an appeal from an appellate court judgment granting plaintiff a new trial on the issue of whether defendant was negligent in posting signs on a roadway. Three issues are presented for review: (1) whether plaintiff may utilize the doctrine of collateral estoppel to prevent defendant from relitigating issues regarding the adequacy of the signs on this roadway; (2) whether plaintiff may impeach defendant's witnesses with evidence of subsequent remedial measures taken on the roadway; and (3) whether section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 3—104) provides defendant with immunity. We reverse the appellate court judgment (254 Ill. App. 3d 337), which granted plaintiff a new trial.

Background

On November 23, 1985, plaintiff, Carl Herzog, was injured when a car he was driving was involved in a single-car accident. The accident occurred on the Pine Street extension, which is a county road maintained by defendant, Lexington Township. At the time of the accident, the road contained a series of curves preceded by a single, winding road sign. There was no posted speed limit. Plaintiff filed a complaint in the circuit court of McLean County alleging that the defendant was negligent in failing to warn drivers of the number and severity of the curves and the speed at which they could be safely traveled.

Plaintiff filed a pretrial motion for collateral estoppel, seeking to bar defendant from relitigating its negligence in regard to this series of curves. Plaintiff

contended that defendant's negligence regarding this series of curves was determined in *Johnson v. O'Neal* (1991), 216 Ill. App. 3d 975. In *Johnson*, defendant was found negligent in another single-car accident allegedly occurring at the same point in the Pine Tree extension some three weeks after the instant action. The trial court denied plaintiff's motion, finding that substantial differences between the cases prevented application of estoppel.

Defendant also filed a number of pretrial motions. First, defendant filed a motion for summary judgment, arguing that it was under no duty to post additional signs and that it was immune from liability under the Tort Immunity Act. (See Ill. Rev. Stat. 1985, ch. 85, pars. 3—104(a), (b).) The trial court denied this motion, finding that once the defendant undertook a duty to place a sign, it must place proper ones to warn of the conditions on the road. Second, defendant filed a motion *in limine* to exclude evidence of additional signs that were placed on the roadway after the accident. The trial court granted this motion.

At trial, plaintiff presented expert testimony that the single, winding road sign was inadequate. Plaintiff's expert further testified that he would have placed eight signs on this series of turns, including a curve sign, a reverse-turn sign, two advisory speed plates, a large arrow sign, and three chevrons. Plaintiff's expert expressed no criticism as to the placement of the single, winding road sign present at the time of the accident.

Defendant presented testimony from Randall Patton, the Lexington Township road commissioner, and Herbert Bekermeier, a former McLean County highway superintendent. Both stated that the single, winding road sign in existence at the time of the accident was adequate. At no time during this testimony did plaintiff indicate to the court a desire to impeach this testimony

with evidence of subsequent signs these witnesses were responsible for placing on the roadway.

The jury returned a verdict in favor of the defendant. In response to a special interrogatory, the jury found that plaintiff's negligence was the sole proximate cause of his injuries. Plaintiff appealed from this jury verdict, arguing that the trial court erred in denying his motion for collateral estoppel. Plaintiff also argued that because defendant's witnesses testified that the single sign was adequate, he should have been permitted to impeach this testimony with evidence that they placed five additional signs along the roadway after the accidents.

The appellate court, with one justice dissenting, agreed with the plaintiff that certain issues determined in *Johnson* should be given collateral estoppel effect. (254 Ill. App. 3d 337.) Specifically, the appellate court ruled that defendant should be prevented from relitigating "issues regarding the failure to warn of the number and severity of the changes in alignment in the road and the speed at which they could safely be travelled." (254 Ill. App. 3d at 348-49.) The appellate court rejected further application of collateral estoppel on the ultimate issues of causation and negligence. (254 Ill. App. 3d at 348-49.) The appellate court also rejected defendant's argument that estoppel should not apply because it should be found immune from liability pursuant to the Tort Immunity Act. 254 Ill. App. 3d at 347.

The appellate court next addressed plaintiff's desire to introduce evidence of subsequent remedial measures. The appellate court held that plaintiff should be permitted on retrial to impeach defendant's witnesses with evidence that they placed additional signs at this series of curves after the accident. (254 Ill. App. 3d at 350.) The appellate court reasoned that defendant invited this impeachment by eliciting opinions on the adequacy of

the original sign from those responsible for erecting additional signs after the accident. 254 Ill. App. 3d at 350.

The dissenting justice argued that defendant was immune from liability pursuant to the Tort Immunity Act. (254 Ill. App. 3d at 351 (McCullough, J., dissenting).) The dissenting justice further argued that the trial court properly denied plaintiff's motion for estoppel. (254 Ill. App. 3d at 351 (McCullough, J., dissenting).) The dissenting justice reasoned that estoppel was inappropriate because *Johnson* involved different issues and defendant was in essence a "prevailing party" due to a setoff in that case. (254 Ill. App. 3d at 351-52 (McCullough, J., dissenting).) The dissenting justice also argued that defendant's witnesses should not be impeached with evidence they placed additional signs on the roadway because the prejudice of such evidence outweighs its probative value. 254 Ill. App. 3d at 352 (McCullough, J., dissenting).

We granted defendant's petition for leave to appeal. (145 Ill. 2d R. 315(a).) We also allowed the Illinois Trial Lawyers Association and the Illinois Governmental Association of Pools to file *amicus curiae* briefs. First, we address whether the trial court erred in denying plaintiff's motion for collateral estoppel. Second, we address whether plaintiff should have been permitted to impeach defendant's witnesses with evidence of subsequent remedial measures taken on the roadway. We do not find it necessary to address whether defendant is immune from liability pursuant to the Tort Immunity Act.

I

The appellate court granted plaintiff a new trial, finding that the trial court erred in denying plaintiff's motion for collateral estoppel. Collateral estoppel is an equitable doctrine that precludes a party from relitigating an issue decided in a prior proceeding. The doctrine

is grounded on considerations of efficiency and fairness. The threshold requirements for application of collateral estoppel are: (1) that the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) that there was a final judgment on the merits in the prior adjudication; and (3) that the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7.

Historically, collateral estoppel was further limited by the requirement of mutuality of parties. Under this requirement, neither party could assert collateral estoppel unless both parties were bound by the prior judgment. (See *In re Hutul* (1973), 54 Ill. 2d 209, 213.) Where mutuality of parties existed, the doctrine was applied evenhandedly whether asserted by the plaintiff or the defendant. *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 427.

This court eliminated the mutuality requirement in *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1. In order to prevent any potential unfairness created by this expansion of the doctrine, this court has distinguished between "offensive" and "defensive" use of collateral estoppel. Nonmutual offensive collateral estoppel occurs where a plaintiff who was not a party to the prior proceeding seeks to prevent a defendant from relitigating an issue previously decided. (*Van Milligan v. Board of Fire & Police Commissioners* (1994), 158 Ill. 2d 85, 95.) Nonmutual defensive collateral estoppel occurs where a defendant who was not a party in a prior proceeding seeks to prevent a plaintiff from relitigating an issue previously decided. *In re Owens* (1988), 125 Ill. 2d 390, 397.

This court has cautioned against the indiscriminate application of offensive collateral estoppel where there

is no mutuality of parties. (*Van Milligan*, 158 Ill. 2d at 95; *In re Owens*, 125 Ill. 2d at 398.) This court has noted that the considerations of efficiency and fairness are not always served in this context. For example, offensive collateral estoppel can frustrate efficiency by giving a plaintiff an incentive to delay litigation. This is because a plaintiff will be able to rely on a prior judgment if it is favorable, but would not be bound if the decision is unfavorable. Thus, a plaintiff would be encouraged to adopt a "wait and see" attitude. *Van Milligan*, 158 Ill. 2d at 95 (quoting *Owens*, 125 Ill. 2d at 398, quoting *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 330, 58 L. Ed. 2d 552, 561, 99 S. Ct. 645, 651).

Offensive collateral estoppel also brings into question considerations of fairness. (*In re Owens*, 125 Ill. 2d at 399.) A defendant may not have an incentive to fully litigate the prior suit if the damages in that case are small and there is no reason to foresee future actions on the same subject matter. (*Van Milligan*, 158 Ill. 2d at 95, citing *Owens*, 125 Ill. 2d at 399.) Also, there may be procedural opportunities available in the subsequent case that could cause a different result. *In re Owens*, 125 Ill. 2d at 399, citing *Parklane Hosiery*, 439 U.S. at 330, 58 L. Ed. 2d at 561, 99 S. Ct. at 651.

With these considerations in mind, this court has cautioned against the unrestrained application of nonmutual offensive collateral estoppel. (*In re Owens*, 125 Ill. 2d at 399.) Instead, the court has stated that "circuit courts must have broad discretion to ensure that application of offensive collateral estoppel is not fundamentally unfair to the defendant, even though the threshold requirements for collateral estoppel are otherwise satisfied." *In re Owens*, 125 Ill. 2d at 399-400.

We conclude that the trial court did not err in denying plaintiff's motion for collateral estoppel. First, the threshold requirements are not satisfied because there

is no discernible identity of issues between the cases. Second, application of estoppel under the circumstances of the present case would be unfair to the defendant.

The plaintiff in *Johnson* alleged several theories to support defendant's negligence. Specifically, the *Johnson* plaintiff alleged that "the township (1) failed to correctly identify the number of the curves in the road, (2) failed to post a safe speed or reduce the speed limit on the road in the area where the accident occurred, and (3) failed to advise motorists of the severity of curves in the road and the speed at which the curves could be safely traveled." (*Johnson*, 216 Ill. App. 3d at 977.) The *Johnson* jury returned a general verdict in favor of the plaintiff.

The appellate court was in error when it applied collateral estoppel where it was impossible to determine on which issue the plaintiff prevailed in the previous case. Where "a judgment *** is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." (Restatement (Second) of Judgments § 27, Comment *i*, at 259 (1982).) As the plaintiff in *Johnson* advanced several theories of negligence that would be sufficient to support the jury verdict, no discernible issue was conclusively determined.

For example, the *Johnson* jury may have determined that the single, winding road sign was adequate and defendant did not breach his duty to warn of the number and severity of the turns. Nonetheless, the *Johnson* jury may have determined that defendant breached a duty in failing to post a safe speed and that this breach caused the accident. In contrast, the *Johnson* jury may have found that defendant breached a duty by failing to erect additional signs showing the configuration of the road, but not in failing to post a safe speed. A favorable

finding on either issue was sufficient to support the general jury verdict in favor of the plaintiff. As the instant plaintiff cannot show that either issue was actually decided in *Johnson*, he may not prevent defendant from relitigating either issue.

Second, application of offensive collateral estoppel in this case is also unfair to the defendant. There are procedural opportunities available to the defendant in the present case that could cause a different result. For example, in the present case defendant was able to exclude evidence of the subsequent *Johnson* accident on grounds it was irrelevant. However, the plaintiff in *Johnson* was permitted to tell the jury that defendant was aware of the dangerous condition of the road because of a previous accident. In addition, the *Johnson* suit was brought by a passenger, while the instant case involves a driver of the car. Thus, different theories of contributory negligence apply.

We also note that defendant did not have a meaningful incentive to appeal the *Johnson* case. The plaintiff in *Johnson* was a passenger in the vehicle and had obtained a pretrial settlement from the driver. Although defendant lost at trial, defendant was able to set off the entire amount of its liability with the proceeds from this settlement. Under these circumstances, forcing defendant to appeal in order to prevent application of estoppel in later cases is unfair and does not promote efficiency.

In passing, we question the appellate court's reversal of the jury verdict in favor of defendant, in light of the special interrogatory answered by the jury finding that plaintiff was the sole proximate cause of his injuries. The appellate court reversed the trial court, finding *only* that defendant should have been precluded from relitigating whether it breached a duty in failing to warn of the number and nature of the turns in the road and the speed at which those turns could be safely traveled. (254

Ill. App. 3d at 348-49.) For obvious reasons, the appellate court did not further allow plaintiff to utilize collateral estoppel to preclude defendant from litigating whether this breach was the proximate cause of the second accident. (254 Ill. App. 3d at 348-49.) As the jury specifically found that plaintiff was the sole proximate cause of this second accident, any perceived error should have been considered harmless because it would not have changed the result.

## II

We next address whether plaintiff should be permitted to impeach defendant's witnesses with evidence of subsequent remedial measures taken on the roadway. After the accident, defendant erected additional signs on the roadway. These signs included advisory speed plates and additional winding road markings.

Prior to trial, defendant moved *in limine* to exclude any reference to these additional signs. The trial court granted defendant's motion. At no time during the consideration of this motion did plaintiff argue that he should be entitled to impeach defendant's witnesses with the evidence of the additional signs. Moreover, at no time during the trial did plaintiff give any indication of a desire to impeach plaintiff's witnesses with evidence of these signs.

The appellate court noted that plaintiff failed to preserve any error and therefore the issue was waived. (254 Ill. App. 3d at 349.) However, the appellate court, having ordered a new trial on the basis of its collateral estoppel ruling, decided to address the issue in order to provide guidance to the trial court on retrial. (254 Ill. App. 3d at 349.) On the merits, the appellate court found that defendant's witnesses may be impeached with evidence of the additional signs they placed on the roadway. (254 Ill. App. 3d at 350.) In support of this holding, the appellate court reasoned that the defendant "invited"

this impeachment by eliciting testimony from their witnesses that the original sign was adequate, where those witnesses were responsible for erecting the additional signs after the accident. 254 Ill. App. 3d at 350.

Initially, we note that we need not address this issue in order to resolve the controversy between the parties. The appellate court found this issue waived, but addressed it only because a new trial was required on the basis of the collateral estoppel ruling. We have already determined that the trial court did not err in denying plaintiff's motion for collateral estoppel. Thus, the rationale for ignoring plaintiff's waiver no longer exists. Nonetheless, the rule of waiver is a limitation on the parties and not the jurisdiction of the courts. (*In re Marriage of Sutton* (1990), 136 Ill. 2d 441, 446.) In the interest of maintaining a sound and uniform body of precedent, we address this issue. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1994), 158 Ill. 2d 240, 251.

Evidence of post-accident remedial measures is not admissible to prove prior negligence. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1.) Several considerations support this general rule. First, a strong public policy favors encouraging improvements to enhance public safety. (*Schaffner*, 129 Ill. 2d at 14.) Second, subsequent remedial measures are not considered sufficiently probative of prior negligence, because later carefulness may simply be an attempt to exercise the highest standard of care. (*Schaffner*, 129 Ill. 2d at 14.) Third is a general concern that a jury may view such conduct as an admission of negligence. *Hodges v. Percival* (1890), 132 Ill. 53, 56-57.

Although evidence of subsequent remedial measures is not admissible to prove prior negligence, such evidence may be admissible for other purposes. For example, evidence of subsequent remedial measures may be admissible for the purpose of proving ownership

or control of property where disputed by the defendant. (See *Schultz v. Richie* (1986), 148 Ill. App. 3d 903, 910; *Coshenet v. Holub* (1980), 80 Ill. App. 3d 430, 431.) Such evidence may also be admissible for the purpose of proving feasibility of precautionary measures where disputed by the defendant. See *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 319 (products liability); *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94 (feasibility of spotter for crane operation).

Illinois has long recognized that subsequent remedial measures may also be used for impeachment purposes. (See *City of Taylorville v. Stafford* (1902), 196 Ill. 288.) However, the principles necessary for determining when the impeachment exception should apply have not been clearly articulated. The appellate court determined that because defendant's witnesses testified that the single, winding road sign present on the date of the accident was adequate, plaintiff should have been permitted to impeach this testimony with evidence those same individuals were responsible for placing additional signs on the roadway after the accident. We disagree.

The flaw in the appellate court's reasoning is that the sole value of the impeachment rests on the impermissible inference that the subsequent measures are admissible evidence of prior negligence. Defendant's witnesses testified only that the single sign present on the roadway was adequate. In order for the evidence of the subsequent signs to be considered impeaching, we must accept the premise that the conduct of placing additional signs contradicts the witnesses' testimony and supports the view that the original condition was unsafe. However, this premise directly contradicts the assumptions that support the general rule regarding subsequent remedial measures. Just as evidence of subsequent remedial measures is not considered sufficiently probative

to be admissible to prove prior negligence, that evidence is not admissible for impeachment where the sole value of the impeachment rests on that same impermissible inference of prior negligence.

Allowing such evidence in these circumstances would swallow the general rule prohibiting the introduction of subsequent remedial measures and frustrate the policy considerations that support it. In every case, a defendant will dispute that his prior conduct was negligent. Once a defendant disputes his or her negligence at trial, a plaintiff could always seek to introduce evidence of subsequent remedial measures under the guise of impeachment. Thus, the general rule of excluding evidence of subsequent remedial measures would be swallowed by the impeachment exception. Furthermore, contrary to the policies supporting the general rule, parties to lawsuits would be discouraged from making improvements for fear that such actions would be used against them at trial.

Where the impeachment value rests on inferences other than prior negligence, such evidence may be admitted where its probative value outweighs the prejudice to defendant. For example, this court first recognized that evidence of subsequent remedial measures may be admissible for the purpose of impeachment in *City of Taylorville v. Stafford* (1902), 196 Ill. 288. In that case, plaintiff was injured when she stumbled on a stake jutting up from a walkway. Defendant introduced evidence of a measurement of the stake taken after the accident that differed from plaintiff's measurement. This court found that plaintiff was properly permitted to attack this testimony with evidence that the difference in defendant's measurement was due to defendant's subsequent repair of the walkway. *Stafford*, 196 Ill. at 290-91.

Similarly, where the defendant goes beyond stating

that the original condition was safe or adequate, and attempts to make exaggerated claims that the condition was the "safest possible," fairness may require that conduct inconsistent with these claims be admitted. (See *Muzyka v. Remington Arms Co.* (5th Cir. 1985), 774 F.2d 1309 (allowing impeachment of gun manufacturer with evidence of subsequent changes to safety mechanism where defendant repeatedly stated that mechanism was "safest" possible).) In such a situation, the defendant has gone beyond simply stating that he was not negligent prior to the accident and claimed that no greater care was possible. Any subsequent remedial measure taken by the defendant is directly impeaching of this claim without an inference of prior negligence. See also *Lewis*, 217 Ill. App. 3d 94 (allowing impeachment of defendant's witness who claimed that placing spotter was not "feasible" with evidence that a spotter was used later the same day).

Defendant's witnesses never made any exaggerated claims regarding the safety of the roadway or disputed that placing the additional signs on this roadway was possible. Defendant's witnesses only testified that the single, winding road sign was adequate and that traffic was capable of moving safely through the turns. Thus, plaintiff was not entitled to impeach this testimony with evidence of the additional signs defendant placed on the roadway after the accident.

### III

We need not address whether the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—104) provides defendant with immunity. We have already reversed the appellate court order granting plaintiff a new trial. Furthermore, section 3—104 was amended in 1986. (See Pub. Act 84—1431, art. 1, § 2, eff. November 25, 1986 (expanding coverage of section 3—104(a) and deleting section 3—104(b)).) Thus, any construction of that stat-

ute would apply to only those pending cases filed before November 25, 1986.

## Conclusion

For the reasons stated, the judgment of the appellate court, reversing the trial court's judgment and remanding for further proceedings, is reversed. The judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HARRISON, dissenting:

I agree with the appellate court that Lexington Township should have been collaterally estopped from relitigating the issue of whether it failed to advise motorists of the number and severity of the curves on the road and the speed at which those curves could safely be travelled. As the appellate court correctly recognized, this precise issue was previously litigated and decided against the township in *Johnson v. O'Neal* (1991), 216 Ill. App. 3d 975, a case that involved the same section of roadway under the same conditions present here. The distinctions my colleagues attempt to draw between the two cases are meaningless. If the signs were inadequate in *Johnson*, as the jury found them to be, they were inadequate in this case as well. Because the same charges were levelled in each case based on the set of circumstances, identifying the precise reason the jury found the signs to be inadequate is immaterial.

The township had every opportunity to appeal the adverse judgment against it in *Johnson*, 216 Ill. App. 3d 975, and, having failed to do so, it should not be allowed to advance a contrary position in this case. To excuse the township's lapse in *Johnson*, as the majority does, on the theory that it had no incentive to appeal diminishes the meaning of the adjudicatory process. While cost-benefit analyses can play an important role in trial

strategy, litigants make a serious mistake if they view the proceedings as nothing more than a game of dollars and cents. Our legal system is based on the proposition that a jury's verdict is the culmination of a search for the truth. If we are to nourish this principle, verdicts must be recognized as having authority independent of the objectives of the litigants in a particular dispute. Having proceeded to trial and judgment, a losing party cannot dismiss the jury's adverse judgment by claiming it was simply not worth it to fight on. If a losing party believes he is right, he should appeal. If he is worried about the costs of vindication, he should work out a settlement that avoids entry of an adverse judgment against him in the first place.

I note, moreover, that the township actually had ample incentive to appeal the judgment against it in *Johnson*, 216 Ill. App. 3d 975. By the time that case was resolved, other accidents had occurred at the same location under similar circumstances, including the one involved here, raising the possibility of additional litigation. Had the township really believed it was not negligent and that the judgment in *Johnson*, 216 Ill. App. 3d 975, was wrong, one would certainly have expected it to appeal in order to discourage additional lawsuits and prevent adverse precedent that injured parties might attempt to use against it later.

The majority points out that *Johnson*, 216 Ill. App. 3d 975, was brought on behalf of a passenger in the car, while the plaintiff here was the car's driver. I fail to see, however, how that is at all relevant to the issue of whether collateral estoppel should apply. This case presents a textbook example of when the doctrine is appropriate, and there is not the slightest unfairness in barring the township from relitigating the issue of whether it failed to advise motorists of the number and severity of the curves on the road and the speed at which those curves could safely be travelled.

One cannot say that preventing the plaintiff from using collateral estoppel was harmless error. Although the jury returned a special interrogatory indicating that the plaintiff was the sole proximate cause of his injuries, the majority gives this too much significance. While the jury may conceivably have answered as it did based on a technical application of the concept of causation, it is just as likely that its answer was based on the conclusion that plaintiff was the only negligent party and that the township had committed no acts or omissions that would subject it to liability. Because only the plaintiff was negligent, the jury may have reasoned, only he could be held responsible for his injuries. Had collateral estoppel been permitted here, on the other hand, the jury may have concluded that the township was negligent as well, leading it to assess the causation issue in an entirely different way.

The accident here occurred before the 1986 amendment to section 3—104 of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 3—104). Section 3—104(b) of the prior law (Ill. Rev. Stat. 1985, ch. 85, par. 3—104(b)) stated that a local public entity could be held liable for failure to provide traffic signs where the signs were

> "necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care."

Based on that provision, I would hold that the township is not immune from suit here. I therefore dissent.