OTTO KESSINGER *et al.*, Plaintiffs-Appellants, v. GREFCO, INC., Defendant-Appellee (Owens-Corning Fiberglas, Defendant).

Fourth District   No. 4—94—0420

Argued March 21, 1995.—Opinion filed June 29, 1995.—Rehearing denied August 17, 1995.

COOK, J., dissenting.

James Walker (argued) and James Wylder, both of James Walker, Ltd., of Bloomington, for appellants.

Thomas H. Fegan (argued), William V. Johnson, and Robert Spitkovsky, Jr., all of Johnson & Bell, Ltd., of Chicago, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiffs Otto Kessinger, Windell and Judy Kessinger, Carl and Imogene Chase, and Juan and Guadalupe Hernandez filed separate suits in the circuit court of McLean County against defendant Grefco, Inc. (Grefco), and other defendants. In April 1992, these cases were consolidated into a single proceeding. By the time of trial, Grefco had become the only remaining defendant. Each of the male plaintiffs sought damages for alleged injuries he received working as an em-

ployee of Union Asbestos and Rubber Company (UNARCO) or its successor, Owens-Corning Fiberglas Corporation (Owens) and for which Grefco or its predecessor, Great Lakes Carbon Corporation (Great Lakes), had furnished diatomaceous earth, Grefco having assumed responsibility for any liability of Great Lakes. The female plaintiffs sought damages for the loss of consortium they suffered because of the alleged injury to their respective husbands.

After a jury trial, the circuit court entered judgment on a verdict for Grefco on July 16, 1993, and on March 29, 1994, denied plaintiffs' post-trial motion. Plaintiffs have appealed, contending that the circuit court erred in (1) rulings in regard to Grefco's claim of an affirmative defense of intervening cause; (2) rulings in regard to plaintiffs' supplemental motion for collateral estoppel and related matters; (3) submitting Grefco's requested special interrogatories to the jury while refusing plaintiffs' definition instruction; and (4) allowing Grefco to use and admit into evidence nondisclosed photographs which were obtained by plaintiffs' retained expert the day before trial.

We conclude that we must reverse and remand for a new trial. Error occurred in regard to the rulings on Grefco's alleged affirmative defense of intervening cause but, as we later explain, that error would not necessarily have required reversal. However, we determine that reversible error occurred in connection with the collateral estoppel issue and related matters.

The evidence showed indisputably that the male plaintiffs had worked at the UNARCO or Owens plant at Bloomington as follows: (1) Otto Kessinger (spring of 1954 to summer of 1955); (2) Windell Kessinger (through 1959, part of 1960 and part of 1965); (3) Chase (1965 until 1970); and (4) Hernandez (10 months in 1959 and 1960). All had some exposure to objects containing diatomaceous earth and to dust which might contain that substance. Grefco or its predecessor, for which it was responsible, furnished that substance to UNARCO or Owens during that period, and it was the only substance furnished by Grefco or its predecessor that could have caused the injury for which suit was brought. The evidence was undisputed that neither Grefco nor its predecessor labeled its product in such a way as to give notice of danger involved in exposure to the product or otherwise gave such notice.

Most of the evidence of the nature of the injuries claimed by the male patients came from the testimony of Dr. Herbert Abrams, a physician who was board certified in preventive medicine and public health. He had studied the medical records and chest X rays and CAT scans of the four male plaintiffs and expressed an opinion that

(1) Otto Kessinger had both asbestosis and silicosis; (2) Windell Kessinger also had both of those diseases; (3) Chase had advanced fibrosis due to both asbestos and silica exposure; and (4) Hernandez had minimal or early stages of both asbestosis and silicosis. Dr. William Neil, Otto Kessinger's family practice physician, said Kessinger had reported shortness of breath to him which he believed resulted from obstructive and restrictive lung disease.

Grefco countered with testimony from Dr. Robert Jones, a professor at Tulane Medical School who limits his practice to lung diseases, and Dr. David Cugell, who also limits his practice primarily to lung diseases and who is director of the pulmonary function laboratory at Northwestern Memorial Hospital in Chicago. They also examined chest X rays and CAT scans of the four male plaintiffs and concluded that almost all of the fibrosis shown on these documents was in the lower lungs, which indicated asbestosis. They stated that they found no evidence of silicosis on any of the X rays.

Abrams agreed with Jones and Cugell that the pulmonary fibrosis that can result from exposure to diatomaceous earth is silicosis and that the pulmonary fibrosis that can result from exposure to asbestos is asbestosis. As we discuss later in more detail, Abrams disagreed with Jones and Cugell as to the likelihood that persons in the situation of the male plaintiffs would be likely to suffer from silicosis, but their major dispute concerned the significance of the place in the lungs where fibrotic changes are shown in determining whether a subject has asbestosis or silicosis. Jones and Cugell contended that such changes in the lower-lung area indicate asbestosis while those in the upper area indicate silicosis. This fundamental difference was the major reason why the diagnosis of Abrams differed from that of the physicians testifying for Grefco.

Neither side disputes the sufficiency of the evidence to support a determination in favor of the other side. The rights of the female plaintiffs are tied entirely to a right of recovery for their respective spouses. Grefco does not dispute that any female plaintiff could recover if her spouse was permitted to do so.

Grefco pleaded as an affirmative defense that at the times the male plaintiffs worked at UNARCO or Owens, each employer "knew or should have known" it was using "fibrotic raw materials" and that workers' exposure to these fibers should be minimized but that despite its knowledge UNARCO or Owens failed to provide adequate safety measures to protect the workers. The pleading then maintained that these factors were the proximate cause of the injuries to the male plaintiffs and that these factors were unforeseeable.

In *Wehmeier v. UNR Industries, Inc.* (1991), 213 Ill. App. 3d 6, 31-

33, 572 N.E.2d 320, 337-38, this court held that on retrial of a suit by former UNARCO employees against suppliers of asbestos for injury allegedly sustained from breathing asbestos dust at the plant involved here, the defense could raise a defense of an intervening factor that UNARCO failed to take measures to protect its employees from the dust. However, this court made clear that the action or inaction of UNARCO would have to be such that it would have been unforeseen by the defendant suppliers. In *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 929, 588 N.E.2d 1193, 1223, this court concluded that no reversible error occurred in the dismissal of an affirmative defense of superseding cause in a case similar to that here where the defense did not allege that the conduct of the employer-user of asbestos and diatomaceous earth was not foreseeable.

■ Here, Grefco's affirmative defense focused upon what UN-ARCO or Owens knew or should have known about diatomaceous earth and not upon what Grefco would have foreseen. Moreover, no evidence indicated that Grefco should not have foreseen that UN-ARCO or Owens was unlikely to take steps to protect its employees from breathing the dust from the diatomaceous earth. Plaintiffs moved at one time to have the defense stricken, but the court denied it. Under the evidence and pleadings here, the issue was never properly raised for consideration by the jury. However, the problem created does not stop with this analysis. Plaintiffs maintain that confusion over the proper manner of instructing the jury on this issue increased the prejudice to plaintiffs arising from this issue.

Over plaintiffs' objection, the court gave an issues instruction in the form of Illinois Pattern Jury Instructions, Civil, No. 20.01 (3d ed. 1989) (hereinafter IPI Civil 3d). It set forth plaintiffs' allegations of negligence and the injuries for which they sought compensation. It also stated that "[t]he plaintiffs further claim that one or more of the foregoing was a proximate cause of their injuries." The instruction then stated as follows:

"Defendant claims

(a) Despite Unarco's knowledge that there were fibrogenic dusts in its plant and its knowledge that it should minimize exposure and inhalation of fibrogenic dusts by its workers, Unarco failed to provide adequate safety measures and protection for its workers in one or more of the following ways:

(1) Failed to provide adequate ventilation systems for the plant;

(2) Failed to provide adequate dust control and collection equipment and failed to regularly clean and maintain such equipment;

(3) Failed to provide adequate dust masks and filters and failed to enforce their use in the plant; and

(4) Failed to clean the air in the plant.

(b) Plaintiffs' injuries, if any, were solely caused by the unforeseeable and intervening and/or superseding acts of Unarco.

The plaintiffs deny the defendant, Grefco, Inc.'s affirmative defense."

Over plaintiffs' objection, the court then gave as a burden of proof instruction one in the general form of IPI Civil 3d No. 21.03, which included in the list of items on which the plaintiffs had the burden of proof, "that the negligence of the defendant was a proximate cause of the injury or loss to the plaintiff." The instruction then continued as follows:

"In this case defendant has asserted the affirmative defense that the injuries and damages, if any, were solely caused by the unforeseeable and intervening and/or superseding acts of Unarco. The defendant has the burden of proving this defense.

If you find from your consideration of all the evidence that each of the propositions required of each of the plaintiffs has been proved and that the defendant's affirmative defense has not been proved, then your verdict should be for the plaintiff. If, on the other hand, you find from your consideration of all the evidence, that any one of the propositions each of the plaintiffs is required to prove has not been proved, or that the defendant's affirmative defense has been proved, then your verdict should be for the defendant."

Thus, the language created confusion as to where the burden of proof lay in regard to causation. At one point, it stated that the plaintiffs must prove proximate cause, but in other places the instructions stated that part of the proof of whether a particular cause was "proximate" depended upon proof by the defendant. Plaintiffs complain about the instructions, because not only are they confusing, but they give great prominence to the alleged intervening factor upon which no evidence was presented.

We need not determine here how the jury should be instructed in regard to the existence of an intervening factor, because here, no evidence of the intervening factor existed. Instruction in that regard was error which could have caused the jury to find for Grefco and could have caused the jury to answer one of the interrogatories submitted to it in Grefco's favor. We turn to the issue of the special interrogatories that were submitted to the jury.

Two interrogatories as to each male plaintiff were requested by Grefco and submitted to the jury by the trial court. One form stated: "Do you find that [(name of male plaintiff)] has silicosis?" The other

form stated: "Do you find [(name of male plaintiff)'s] exposure to diatomaceous earth supplied by Great Lakes Carbon Corporation or Grefco, Inc.[,] to the [UNARCO] plant in Bloomington, Illinois[,] was a proximate cause of his silicosis?" The jury answered each interrogatory in regard to each male plaintiff with the word "[n]o."

■ Section 2—1108 of the Code of Civil Procedure (Code) requires that, upon request of a party, the court shall require the jury "to find specially upon any material question or questions of fact submitted to the jury in writing" and that if "the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." 735 ILCS 5/2—1108 (West 1992).

■ Special interrogatories must bear upon an ultimate issue of material fact. (735 ILCS 5/2—1108 (West 1992); *Ott v. Burlington Northern R.R. Co.* (1986), 140 Ill. App. 3d 277, 282, 488 N.E.2d 606, 609.) No contention is made here that these interrogatories do not meet that requirement. Rather, plaintiffs assert that the special interrogatories were confusing and failed to sharpen the jury's focus upon the issues as required by *First National Bank v. Szwankowski* (1969), 109 Ill. App. 2d 268, 275, 248 N.E.2d 517, 521. Plaintiffs note that the word "silicosis" was not used in other instructions, although this court stated in *Betts* (225 Ill. App. 3d at 901-02, 588 N.E.2d at 1206) that interrogatories should contain language used in other instructions. Plaintiffs assert that error in the form of the interrogatories was compounded by the refusal of the court to give their proposed instruction, which would have defined the word "silicosis" as "pulmonary fibrosis which has as a proximate cause exposure to silica, including diatomaceous earth."

■ While use of words in the interrogatories that were also used in other instructions might have been desirable, we consider the interrogatories were very clear because of the evidence. While the testimony was disputed as to the significance of evidence of fibrosis in various parts of the lung, the evidence was undisputed that the only substance furnished by Grefco that was dangerous was diatomaceous earth, and the only lung disease it could cause was silicosis. While no error resulted from the form of the interrogatories, a better job can be done if the issue arises again on retrial.

Section 2—1108 of the Code states that if a general verdict and the answer to an interrogatory are inconsistent, the answer to the interrogatory controls and judgment should be entered accordingly. Here, the answers to the interrogatories and the general verdict for Grefco were consistent, but had the jury found for plaintiffs, the answer to either interrogatory would have required a judgment for

Grefco. Even if (1) the circuit court had not erred and interjected the question of an intervening causal factor in the case, and (2) the jury had found for the plaintiffs, then the answer to the interrogatories indicating that the jury found that no plaintiff had silicosis would have required entry of a judgment for Grefco. This is assuming no error occurred which bore upon the findings of the jury in regard to whether the male plaintiffs had silicosis.

In *Beiermann v. Edwards* (1990), 193 Ill. App. 3d 968, 550 N.E.2d 587, the State sued a third-party defendant to recover workers' compensation benefits it had paid to a State employee allegedly tortiously injured by that third-party defendant. The jury found for the third-party defendant and answered an interrogatory finding that the third-party defendant's conduct was not a proximate cause of the employee's injuries. The State claimed error in a ruling concerning the extent of the State's rights which were similar to subrogation. The appellate court concluded that the trial court had made no error in this respect, but, in any event, the answer to the interrogatory, which negated any liability of the third-party defendant, controlled. *Beiermann*, 193 Ill. App. 3d at 981, 550 N.E.2d at 596.

■ While section 2—1108 of the Code speaks in terms of the "special finding" controlling when it is inconsistent with the verdict, we conclude that, as in *Beiermann*, the answer to the special interrogatory has significance even though it is consistent with the verdict (but see *Zitlaw v. Woszenzynski* (1981), 102 Ill. App. 3d 804, 810, 430 N.E.2d 46, 50). If we should deem the answer to the interrogatory in regard to having silicosis to be insignificant because it is consistent with the verdict, we would illogically place the plaintiffs in a better position here than if the jury had rendered a general verdict for them.

As we have indicated, the error which does negate the controlling nature of the answer to the special interrogatory concerning whether the male plaintiffs had silicosis arises from the collateral estoppel issue and closely related matters. Plaintiffs rely upon the collateral estoppel effect of a judgment rendered against Grefco as set forth in the opinion in *Kessinger v. Grefco, Inc.* (7th Cir. 1989), 875 F.2d 153. There, plaintiff Jearl Kessinger, who (according to an exhibit in this case) had worked at UNARCO from 1953 to 1968, received a judgment for injuries received from inhalation of dust of diatomaceous earth furnished by Grefco. That plaintiff was not one of the Kessingers who is a plaintiff here, but the evidence there indicated that plaintiff had much the same exposure as did the male plaintiffs here. There, as here, allegations were made that Grefco knew of the danger associated with exposure to diatomaceous earth

and tortiously failed to warn UNARCO employees of the danger. Indeed, the *Grefco* court noted: "[T]he jury found that Grefco and its predecessor manufacturer knew or had reason to know that exposure to [natural diatomaceous earth] could cause fibrosis of the lungs but chose not to warn of the hazard." *Grefco*, 875 F.2d at 156 n.5.

■ This court has described the type of unilateral estoppel asserted here by plaintiffs in these words:

> " 'A party may be estopped from relitigating an issue or question when: the issue in the former case and pending case are identical; a final judgment on the merits has been rendered in the cause asserted as a bar; and the party against whom estoppel is asserted is the same party or in privity with a party in the first cause. Additionally, the party against whom estoppel is asserted must have had a full opportunity to litigate the issue or question.' " *Wolford v. Owens-Corning Fiberglas Corp.* (1988), 176 Ill. App. 3d 312, 314, 530 N.E.2d 721, 722, quoting *Mohn v. International Vermiculite Co.* (1986), 147 Ill. App. 3d 717, 720-21, 498 N.E.2d 375, 377.

Various *in limine* motions were made by plaintiffs to prohibit Grefco from making various assertions concerning the lack of proof that exposure to diatomaceous earth dust can cause fibrosis of the lungs. Grefco agreed that exposure to the substance could cause fibrosis of the lungs (see *Betts*, 225 Ill. App. 3d at 928, 588 N.E.2d at 1223), but would not agree to further limitation of its evidence or argument on the subject. The court refused plaintiffs' request to prohibit Grefco from asserting that diatomaceous earth could not cause such fibrosis in those working in manufacturing facilities such as those at the UNARCO or Owens plant at Bloomington. The court also refused to prohibit Grefco from asserting that such substance could not cause pulmonary fibrosis in those exposed as "end users" and not as miners and those who used the substance in manufacturing.

Clearly the plaintiff in *Kessinger* was an "end user," not a miner, and he used diatomaceous earth in the manufacturing process in a UNARCO plant at Bloomington. In addition, a valid judgment against Grefco had a collateral estoppel effect in that regard.

Plaintiffs' first claim of error arising because the circuit court did not give full recognition to their rights by collateral estoppel occurred when Grefco's opening statement was made. Grefco's counsel stated that 30 to 40 years' exposure to dust from natural diatomaceous earth would be required for a person to acquire lung disease from that exposure. Counsel then stated that such disease *had not occurred*. These statements were made despite the judgment in *Kessinger* determining that an "end user" acquired that disease in not

more than 15 years' exposure to natural diatomaceous earth. The record does not indicate that any objection was made by plaintiffs to this statement. If objection was made, the court would have had an opportunity to sustain the objection, instruct the jury to disregard the argument and thus reduce the prejudice to plaintiffs.

Failure to object also concerns testimony by Dr. Jones on direct examination by Grefco that theoretically workers in industries who handle commercial diatomaceous earth can acquire silicosis from that exposure but that from a practical standpoint the exposure occurring in a working lifetime would be insufficient to produce that disease. Dr. Cugell gave similar testimony on direct examination. This testimony was inconsistent with the estoppel arising from *Kessinger*, where such a manufacturing employee was proved to have suffered from silicosis after a much lesser exposure.

Plaintiffs had attempted to prevent testimony such as the foregoing by Drs. Jones and Cugell from getting to the jury by making their *in limine* motion. However, in order to preserve error, plaintiffs were required to object to the introduction of the testimony, which they did not do. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1994), 163 Ill. 2d 498, 502, 645 N.E.2d 896, 898; *Chubb/Home Insurance Cos. v. Outboard Marine Corp.* (1992), 238 Ill. App. 3d 558, 567, 606 N.E.2d 423, 429; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 103.9, at 28 (6th ed. 1994).

While being cross-examined by plaintiffs, Dr. Cugell testified that he did not believe that "end users" such as the workers at UNARCO who were exposed only to natural commercial diatomaceous earth could acquire lung scarring. Plaintiffs should have asked for the answer to be stricken and the jury to be instructed to disregard it to protect their interest. However, the continued presentation of the evidence barred by operation of the doctrine of collateral estoppel concerns us.

Damage to plaintiffs was exacerbated by the circuit court's *in limine* ruling which granted Grefco's request that plaintiffs were prohibited from referring to litigation, other than that connected with workers' compensation claims, in which Grefco had been a party as a result of a sale of diatomaceous earth. When the ruling was made, it made sense, as such evidence would have been inadmissible in plaintiffs' case in chief. However, when Grefco put on evidence which violated the collateral estoppel created by *Kessinger*, the evidence of the determination in *Kessinger* was relevant.

Ed Weaver, a former manager at UNARCO's Bloomington plant, was called as a witness by Grefco and questioned concerning UNARCO's

knowledge concerning the propensities of diatomaceous earth. Over plaintiffs' objection based upon the application of the collateral estoppel, Grefco was permitted to ask if Weaver had been aware that: "[N]atural diatomaceous earth was only at a risk of pneumoconiosis, lung scarring, in a mine or milling setting where if you were exposed to massive amounts of it over periods of time of thirty to thirty-five years, and that there was no evidence that natural diatomaceous earth could cause a problem when being used in the amounts and for the period of time it was being used at Unarco, would you have done anything different ***?"

In closing argument, Grefco's counsel stated that the reason why the jury had not heard about diatomaceous earth was because it created no problem and "had never been implicated in lung scarring" in a similar setting.

■ The burden placed on a party by a unilateral collateral estoppel is great. The judgment creating the estoppel may have been inaccurate, but the party subject to the estoppel must live with it. Grefco failed to do so here and continually violated the estoppel. Some of the error that resulted has been waived, but its total effect requires the grant of a new trial.

■ Plaintiffs further claim error in the court's refusal to allow admission into evidence of a data sheet prepared by Grefco which indicated that "long term inhalation of dust levels [of diatomaceous earth] in excess of the PEL may cause lung disease (silicosis)." We conclude that document was part of a subsequent remedial measure and was not admissible as an admission of a party opponent. *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 252, 417 N.E.2d 154, 161.

Plaintiffs also complain of error resulting from the use of certain photographs by the physicians testifying for Grefco. Plaintiffs maintain that because of lack of disclosure, their use violated Supreme Court Rule 220(c) (134 Ill. 2d R. 220(c)). This problem will not arise on retrial, and we need not discuss it here.

We reverse the judgment in favor of Grefco and remand to the circuit court of McLean County for a new trial.

Reversed and remanded.

LUND, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent.
In *Betts* (225 Ill. App. 3d at 925-28, 588 N.E.2d at 1221-23), this court reversed a summary judgment entered against Grefco. That

summary judgment had also been based on the collateral estoppel effects of *Kessinger*. In *Betts*, we held the judgment in *Kessinger* could not be given preclusive effect on the ultimate issue of negligence at the Bloomington plant. We held that Grefco could be estopped from denying it knew, before it distributed diatomaceous earth, that exposure could cause fibrosis. We held, however, that Grefco could argue that diatomaceous earth does not cause fibrosis in cases where the exposure is slight.

The trial court in this case complied with our direction in *Betts*. Under *Betts*, Grefco could argue that silicosis (fibrosis resulting from exposure to diatomaceous earth) was unlikely outside the mining and milling industries, and that silicosis was not likely to develop in an end-user setting, such as the Bloomington plant. Of course, Jearl Kessinger, the plaintiff in *Kessinger*, had acquired silicosis while working in the Bloomington plant, but Grefco could argue that his case was unique, not typical of other workers such as plaintiffs. If Grefco argued that silicosis could never occur at the Bloomington plant, that argument was effectively refuted by the experience of Jearl Kessinger. The trial court's rulings in this case properly accommodated the competing considerations we discussed in *Betts*. Plaintiff did not object because the questions asked and answers given were proper.

The policies underlying *res judicata* are not advanced by the majority's ruling. What is applied here is collateral estoppel, issue preclusion, and it is applied in a case where plaintiffs were not parties in the previous case. There is no "mutuality of estoppel" here; if Grefco had been successful in *Kessinger*, plaintiffs would not have been subject to estoppel in this suit. There is an "offensive" use of collateral estoppel here, *i.e.*, use by a plaintiff who seeks to foreclose a defendant from litigating an issue defendant has previously litigated unsuccessfully in another action. Offensive use of collateral estoppel does not always foster judicial economy and fairness in the way that defensive use of collateral estoppel does. (*In re Owens* (1988), 125 Ill. 2d 390, 398, 532 N.E.2d 248, 251, citing *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 330, 58 L. Ed. 2d 552, 561, 99 S. Ct. 645, 651; see also Restatement (Second) of Judgments §§ 28, 29 (1982).) Courts must be cautious in allowing collateral estoppel to be used offensively; the trial courts must have broad discretion to ensure that application of offensive collateral estoppel is not fundamentally unfair to the defendant, even though the technical requirements for collateral estoppel are satisfied. *Owens*, 125 Ill. 2d at 399, 532 N.E.2d at 252.

The trial court acted within its discretion here. The jury heard

all the evidence, including the evidence that Jearl Kessinger contracted silicosis at the Bloomington plant. After hearing that evidence, the jury concluded that these plaintiffs do not have silicosis and cannot recover. The majority opinion sets aside that reasoned determination, not because it was wrong, but because of what may have been said or done in another case. I would affirm.