(No. 79809.

OTTO KESSINGER *et al.*, Appellees, v. GREFCO, INC., Appellant.

*Opinion filed October 18, 1996.*

HARRISON, J., specially concurring.

William V. Johnson and Robert Spitkovsky, Jr., of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellant.

James Walker, Ltd., of Bloomington, for appellees.

Patrick J. Lamb, Kirk T. Hartley, Laura A. O'Connell and Jennifer A. Barrett, of Katten, Muchin & Zavis, of Chicago, for *amicus curiae* Illinois Manufacturers' Association.

JUSTICE McMORROW delivered the opinion of the court:

In this appeal we are asked to determine whether the appellate court misapplied the doctrine of offensive collateral estoppel when it reversed a jury verdict in favor of defendant and remanded the cause for a new trial. The seven plaintiffs are four male employees of Union Asbestos and Rubber Company (UNARCO) or its successor, Owens-Corning Fiberglas Corporation, and the wives of three of the employees. Defendant, Grefco, Inc., and its predecessor supplied diatomaceous earth, a type of silica, to UNARCO and Owens-Corning for industrial uses, including the manufacture of hardboard insulation and pipe covering. During their employment in the 1950s and 1960s, the four male plaintiffs were exposed to both asbestos and diatomaceous earth at

UNARCO's plant in Bloomington, Illinois. They filed suit claiming, *inter alia*, that Grefco had breached a duty to warn them of the risk of contracting pulmonary fibrosis from inhaling dust from diatomaceous earth. The female plaintiffs sought damages based on loss of consortium.

Before trial, plaintiffs moved the trial court to bar Grefco from claiming that pulmonary fibrosis cannot be caused by exposure to natural diatomaceous earth. In support, plaintiffs cited *Kessinger v. Grefco, Inc.*, No. 85—3092 (C.D. Ill. 1987) (unpublished order), *aff'd*, 875 F.2d 153 (7th Cir. 1989) (*Kessinger*). In *Kessinger*, a UNARCO employee from the same Bloomington plant that employed plaintiffs recovered damages based on the theory that he developed pulmonary fibrosis from exposure to products or dust containing diatomaceous earth, and that Grefco breached a duty to warn of such risk, proximately causing the employee's injuries. In the instant case, the trial court granted plaintiffs' request to bar Grefco from contesting that diatomaceous earth could cause silicosis, the type of pulmonary disease that can result from exposure to diatomaceous earth. The trial court also granted plaintiffs' motion to preclude Grefco from arguing that its predecessor, rather than Grefco, was responsible for the sales of diatomaceous earth to the UNARCO plant where plaintiffs worked. However, the trial court denied plaintiffs' subsequent requests to additionally estop Grefco from arguing to the jury that natural diatomaceous earth could not cause fibrosis because plaintiffs were not miners with long-term exposure to the earth dust but instead were employed at an "end use" manufacturing site where exposure to the diatomaceous earth was limited in duration and intensity.

Following trial, the jury returned a verdict in favor of Grefco and against all plaintiffs. In their answers to special interrogatories, the jury found that none of the

four male plaintiffs suffered from silicosis. Plaintiffs appealed, asserting four instances of trial error. The appellate court held that reversible error occurred with respect to the applicability of the collateral estoppel doctrine and remanded for a new trial, observing, "Some of the error that resulted has been waived, but its total effect requires the grant of a new trial." 275 Ill. App. 3d 275, 285.

We granted Grefco's petition for leave to appeal (155 Ill. 2d R. 315) and granted the Illinois Manufacturers' Association leave to file an *amicus curiae* brief in support of Grefco. 155 Ill. 2d R. 345. For the reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

The male plaintiffs' employer, UNARCO, manufactured insulation products. Trial evidence revealed that from the 1950s to the early 1970s, a combination of asbestos and diatomaceous earth was used in the manufacture of some of these products. The four male plaintiffs had worked for the plant for differing periods of time. The longest employment of any of the male plaintiffs was approximately five years, from 1965 to 1970. The other three employees had worked for the plant for considerably shorter periods ranging from a few months to approximately a year. Grefco was responsible for the sale of diatomaceous earth, packaged under the label "Dicalite," and did not supply any asbestos or other products. The instant appeal of Grefco does not involve asbestos-related injuries.

In their complaints, plaintiffs alleged that they developed pulmonary fibrosis from workplace exposure to diatomaceous earth. At trial, plaintiffs identified silicosis as the specific type of pulmonary fibrosis for which plaintiffs sought damages from Grefco. Silicosis was defined at trial as a scarring of the lungs caused by inhalation of silica, a type of mineral dust found in dia-

tomaceous earth. According to plaintiffs, they developed silicosis by inhaling dust from the diatomaceous earth that Grefco supplied in 50-pound bags to the Bloomington UNARCO plant. The evidence indicated that some of the bags of diatomaceous earth carried warnings while others did not. According to plaintiffs, Grefco proximately caused their illnesses by negligently breaching a duty to warn end users, such as plaintiffs, of the risks of developing silicosis by inhaling dust from diatomaceous earth.

Dr. Herbert Abrams, board certified in preventative medicine and public health, testified for plaintiffs. Based on his study of the medical records, chest X rays, and CAT scans of the four male plaintiffs, he believed that all four had developed both asbestosis and silicosis.

Dr. Robert Jones and Dr. David Cugell testified for Grefco. Dr. Cugell is director of the pulmonary function laboratory at Northwestern Memorial Hospital in Chicago. Dr. Jones is a professor at Tulane Medical School who limits his practice to lung diseases. Both doctors examined the chest X rays and CAT scans of the four male plaintiffs. They concluded that almost all of the fibrosis shown thereon began in the lower part of the lungs, thereby indicating the presence of asbestos-related conditions rather than silicosis. Drs. Jones and Cugell testified that they found no evidence of silicosis on any of the X rays.

The former plant manager of UNARCO, Edward Weaver, testified in Grefco's defense. According to Weaver, workers at the plant were given medical examinations out of concern for asbestosis, but he was never aware that there was a hazard associated with breathing diatomaceous earth dust. Other evidence produced by Grefco indicated that natural diatomaceous earth poses no significant health hazards outside the mining and milling processes in which exposure to dust is prolonged and continuous.

According to Grefco, exposure to natural diatomaceous earth dust could cause silicosis in miners and those involved in the mining and milling process only if inhalation of the dust was intensive and continuous for long periods of time. In contrast, end users of the product, such as those persons involved in manufacturing the insulation products from the diatomaceous earth at the UNARCO plant, were highly unlikely to contract silicosis, particularly if their exposure to the dust was infrequent or of short duration.

Grefco also presented evidence distinguishing between the health risks associated with the natural form of diatomaceous earth, which Grefco supplied to UNARCO, and the calcined form, which Grefco did not supply to UNARCO. According to the evidence presented, calcined diatomaceous earth results from a process of heating the earth at very high temperatures, which partially converts the earth to a crystalline substance. When the calcined diatomaceous earth is cut for industrial use, the resulting dust apparently can pose a significant health hazard to persons exposed for a period of two to five years.

In addition to its primary defense that plaintiffs did not have silicosis and that Grefco did not breach a duty to warn of dangers resulting from natural diatomaceous earth dust, Grefco raised the affirmative defense of intervening causation. This defense was based on the theory that at the time the four men worked at the UNARCO plant, their employers knew or should have known that the plant was using "fibrotic raw materials" and that workers' exposure to the materials should have been minimized by the taking of adequate safety measures at the workplace. According to Grefco, UNARCO's acts or omissions in regard to safety measures were not foreseeable by Grefco and constituted the intervening proximate cause of plaintiffs' injuries.

At the request of Grefco, the trial court tendered to the jury special interrogatories for each male plaintiff asking whether the jury found that the plaintiff had developed silicosis and, if so, whether his silicosis was proximately caused by exposure to diatomaceous earth. Each of the four special interrogatories asked the following questions:

"A. Do you find that [name of plaintiff] has silicosis?
Yes_____     No_____

B. Do you find [name of plaintiff]'s exposure to diatomaceous earth supplied by *** Grefco, Inc. to the Unarco plaint in Bloomington, Illinois was a proximate cause of his silicosis?
Yes_____     No_____."

In each of the four tendered special interrogatories, the jury responded "No" in answer to both questions. The jury returned a general verdict in favor of Grefco and the circuit court entered judgment thereon.

On appeal to the appellate court, plaintiffs (1) challenged the trial court's rulings with respect to Grefco's affirmative defense of intervening causation and related jury instructions; (2) argued that the court erred in its ruling on the scope of the collateral estoppel issues; (3) charged error in the submission of the special interrogatories to the jury; and (4) contended that Grefco should have been barred from using photographs at trial that were not disclosed until the day before trial. With the exception of the collateral estoppel issue, the appellate court found no reversible error, particularly in light of the jury's clear response to the special interrogatories that found none of the plaintiffs had developed silicosis. However, the appellate court held that a new trial should be granted because of Grefco's "continued presentation of the evidence barred by operation of the doctrine of collateral estoppel." 273 Ill. App. 3d at 284.

The record in the instant appeal includes 85 volumes spanning more than 17,000 pages, much of which

consists of pleadings, motions, and discovery material that was generated by this complex multiparty litigation. As noted, plaintiffs raised only four instances of alleged trial error in their appeal. Three of the four were resolved against plaintiffs in the appellate court and are not under review in the instant appeal.

## ANALYSIS

In its appeal before this court, Grefco advances two grounds for reversing the judgment of the appellate court. Grefco argues that the appellate court's application of the doctrine of offensive collateral estoppel is erroneous and contradicts recent precedent of this court and the appellate court. *E.g., Herzog v. Lexington Township*, 167 Ill. 2d 288, 296 (1995); *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 95 (1994); *In re Owens*, 125 Ill. 2d 390 (1988); *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882 (1992). Alternatively, Grefco contends that the appellate court erred in granting plaintiffs a new trial because the special interrogatory answers reflect the jury's finding that none of the plaintiffs had been injured by any act or omission of Grefco. Therefore, Grefco contends, any alleged trial errors did not result in prejudice to plaintiffs or necessitate a new trial.

### I

We begin our analysis by considering the significance of the jury's special interrogatory answers to the judgment in this case. To recover legal damages, plaintiffs had the burden of proving by the preponderance of evidence that Grefco owed them a duty, that Grefco breached that duty, and that plaintiffs were injured as a proximate result. The jury explicitly found that none of the four male plaintiffs suffered from silicosis, the only disease in issue that was identified by plaintiffs as potentially resulting from inhalation of dia-

tomaceous earth dust. The record contains sufficient evidence to support the jury's findings, and plaintiffs do not contend that either the special interrogatory answers or the general verdict is against the manifest weight of the evidence. Therefore, plaintiffs failed to prove an essential element of their causes of action against Grefco.

In their appeal to the appellate court, plaintiffs claimed error in the wording of the special interrogatories. However, plaintiffs did not argue that the interrogatories were substantively improper or that they failed to address an ultimate issue of material fact. See 735 ILCS 5/2—1108 (West 1992). The appellate court held that the special interrogatories "were very clear because of the evidence" and that no error resulted from the submission of the special interrogatories to the jury. 273 Ill. App. 3d at 281. The appellate court further noted that the special interrogatory answers were consistent with the general verdict favoring Grefco. In the instant appeal, plaintiffs have not renewed their challenge to the special interrogatories. Therefore, the propriety of the special interrogatories is not in dispute.

Notwithstanding the jury's finding that plaintiffs had not sustained any compensable injury, the appellate court majority reversed the judgment for Grefco and remanded for new trial. The appellate court held that the jury's answers to special interrogatories should not be given controlling effect in the case at bar because of error "aris[ing] from the collateral estoppel issue and closely related matters." 273 Ill. App. 3d at 282. The appellate court concluded that plaintiffs' right to a fair trial had been undermined when Grefco presented evidence and argument that should have been precluded by the collateral estoppel effect of a prior adjudication involving Grefco and a different plaintiff, *Kessinger v. Grefco, Inc.*, 875 F.2d 153 (7th Cir. 1989).

We reject the appellate court's reasoning with respect to the dispositive effect to be given the special interrogatories and the proper scope of collateral estoppel. In our view, the jury's specific findings that the male plaintiffs did not suffer from silicosis established that each plaintiff failed to establish his *prima facie* cause of action. No plaintiff was found by the jury to have been injured by tortious acts or omissions of Grefco. Accordingly, any perceived error in the trial court's discretionary ruling on collateral estoppel presumably was harmless. See *Herzog v. Lexington Township*, 167 Ill. 2d 288, 298 (1995) ("we question the appellate court's reversal of the jury verdict in favor of defendant, in light of the special interrogatory answered by the jury finding that plaintiff was the sole proximate cause of his injuries"). We do not, however, decide this appeal solely by confirming the controlling nature of the jury's answers to special interrogatories. As noted, the appellate court held that the otherwise controlling nature of the special interrogatories did not negate error arising from the circuit court's application of the doctrine of collateral estoppel. For that reason, and because the appellate opinion in the instant case appears to conflict with precedent of this court and other appellate decisions, we consider the proper scope to be given the collateral estoppel doctrine in the case at bar.

## II

According to Grefco, the appellate court misapplied the doctrine of offensive collateral estoppel by bestowing unduly broad preclusive effect on the verdict in *Kessinger v. Grefco, Inc.*, 875 F.2d 153 (7th Cir. 1989), a case with significantly different facts and issues. In *Kessinger*, an employee of the same UNARCO plant that employed the instant plaintiffs recovered damages for pulmonary fibrosis caused by his exposure to natural and calcined diatomaceous earth over the course of ap-

proximately 15 years of employment. The Seventh Circuit Court of Appeals affirmed the jury's verdict as not against the weight of the evidence produced in that case. The federal court's opinion contains few facts pertinent to the *Kessinger* plaintiff's medical condition or the nature and intensity of his exposure to dust from diatomaceous earth. The issue in the *Kessinger* opinion that explores Grefco's liability under products liability law is whether Grefco owed the plaintiff a legal duty under the facts to warn of dangers associated with natural diatomaceous earth, and whether breach of such duty had been proven. With respect to the question of whether Grefco was aware that a known danger associated with diatomaceous earth existed during the relevant times, the Seventh Circuit remarked that the evidence produced at trial was "enough for the jury to hang its hat on." *Kessinger*, 875 F.2d at 156. Additionally, the court held that the record in that case supported the inference that Grefco had breached its duty to warn plaintiff of the risk of inhaling diatomaceous earth dust, based on Grefco's alleged failure to include warnings on bags of Dicalite that were furnished to UNARCO. *Kessinger*, 875 F.2d at 157-58.

In the instant case, plaintiffs filed pretrial motions requesting the circuit court to limit Grefco's evidence by according collateral estoppel effect to the verdict in *Kessinger*. Initially, plaintiffs only sought to preclude Grefco from denying that exposure to diatomaceous earth could cause silicosis, that Grefco supplied the substance in issue to UNARCO, and that Grefco, rather than Grefco's predecessor, was the party legally responsible for any recovery of plaintiffs. Grefco did not challenge the estoppel effect to be given the *Kessinger* case with respect to these three issues and the circuit court granted plaintiffs' motion.

Thereafter, plaintiffs filed supplemental motions *in*

*limine* seeking to greatly expand the court's previous ruling on the estoppel issue. Plaintiffs argued that Grefco should not be permitted to argue or present evidence that silicosis could not develop in end users, such as plaintiffs, who worked in plants that used natural diatomaceous earth as an ingredient in other products. Based on materials produced during discovery, plaintiffs were aware that Grefco intended to assert that the risk of silicosis from exposure to natural diatomaceous earth was exceedingly slight for persons working at sites like the Bloomington UNARCO plant and that the more likely occurrence of silicosis would be in miners and workers who were extensively exposed, over 30 to 40 years, to the dust given off in the mining and milling processes. Grefco's experts also distinguished between natural diatomaceous earth and the calcined form, in which high-temperature baking of the earth results in the formation of cristobalite, a crystalline form of silica. According to Grefco's experts, the natural form of diatomaceous earth does not pose a significant health hazard, particularly where exposure is not of intensive, continuous, and long-term duration. The calcined form, however, could pose a significant health hazard to persons exposed for periods estimated by certain authorities as ranging from two to five years. Grefco did not supply calcined diatomaceous earth to UNARCO.

In ruling on plaintiffs' supplemental motions *in limine* on the estoppel issues, the circuit court considered relevant pleadings and testimony from the *Kessinger* trial as well as case law, including *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882 (1992). The circuit court denied plaintiffs' supplemental requests to expand the scope of the collateral estoppel. The trial court held that the general verdict in *Kessinger* could not be used to prevent Grefco from asserting that the nature, intensity, and duration of plaintiffs'

exposure to natural diatomaceous earth in the case at bar was insufficient to cause silicosis.

In reversing judgment for Grefco and remanding for new trial, the appellate court in the instant case stated that Grefco "put on evidence which violated the collateral estoppel created by *Kessinger*" and that Grefco "continually violated the estoppel." The appellate court did not, however, articulate the nature or scope of "the estoppel" to which it referred. Indeed, no single controlling issue based on the same facts common to both *Kessinger* and the instant case is delineated in the appellate court's opinion. As a result, we cannot discern the exact ground on which the appellate court's reasoning rests.

In their brief, plaintiffs posit that "[w]hat the estoppel order should accomplish is to estop Grefco from a position before a jury that the diatomaceous earth sold to Bloomington could never result in disease." It is evident from the record that the circuit court's order accomplished exactly that. Grefco did not deny that diatomaceous earth such as that sold to UNARCO could never result in disease. What Grefco contested was the likelihood of *these* plaintiffs contracting silicosis from their relatively minor exposure to natural diatomaceous earth in the course of their employment at UNARCO.

The basic theory behind principles of collateral estoppel is that if two parties undergo a full and fair trial that results in a final judgment, neither party may seek a different result upon the same facts and issues in a subsequent lawsuit. When properly applied, collateral estoppel or issue preclusion promotes fairness and judicial economy by preventing relitigation in one suit of an identical issue already resolved against the party against whom the bar is sought. Defensive use of collateral estoppel occurs when a defendant invokes the doctrine to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost. See *In re*

*Owens,* 125 Ill. 2d 390, 397 (1988). Offensive use of collateral estoppel "occurs when a plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in another action." *Owens,* 125 Ill. 2d at 397.

This court has repeatedly noted that unrestrained use of offensive collateral estoppel can frustrate judicial efficiency and deprive a defendant of a fair trial. *E.g., Herzog v. Lexington Township,* 167 Ill. 2d 288, 296 (1995); *Van Milligan v. Board of Fire & Police Commissioners,* 158 Ill. 2d 85, 95 (1994); *Owens,* 125 Ill. 2d at 398-99. Accordingly, this court has "caution[ed] against the indiscriminate application of offensive collateral estoppel where there is no mutuality of parties." *Herzog,* 167 Ill. 2d at 295-96. Traditionally, one party could seek collateral estoppel against a party opponent only if *both* had been parties to the prior lawsuit and thereby bound by the outcome of that suit; this requirement was referred to as "mutuality." Under the mutuality requirement, plaintiffs in the instant case would not have been able to successfully raise a collateral estoppel bar because they were not parties to or bound by the *Kessinger* decision. In 1979, however, this court eliminated the mutuality requirement (*Illinois State Chamber of Commerce v. Pollution Control Board,* 78 Ill. 2d 1 (1979)) and set forth the minimum threshold elements that must be satisfied before the circuit court may conclude that a prior adjudication precludes litigation of an issue in the case before it: (1) the issue decided in the prior suit is identical with the one presented in the pending suit; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was either a party or in privity with a party in the prior lawsuit. *Illinois State Chamber of Commerce,* 78 Ill. 2d at 7; accord *Herzog,* 167 Ill. 2d at 295; *Owens,* 125 Ill. 2d at 399-400.

In the instant case, the second and third elements are not in dispute, but Grefco strongly contests the existence of a common and controlling issue shared by the instant case and *Kessinger*. This court has long recognized the importance of the existence of an identical issue to the operation of issue preclusion:

> " 'To operate as an estoppel by verdict it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court the estoppel will not be applied, for the reason that the court may have decided upon one of the other issues of fact.' " *Lange v. Coca-Cola Bottling Co. of Chicago, Inc.*, 44 Ill. 2d 73, 75 (1969), quoting *Hoffman v. Hoffman*, 330 Ill. 413, 418 (1928).

In *Lange*, this court reversed a summary judgment entered in favor of a plaintiff who sought to bar defendant from contesting liability in a personal injury action arising out of a collision between the parties' vehicles. The basis of the estoppel was a prior adjudication in which the defendant corporation had sued the plaintiff for damages to the defendant's truck and lost. This court held that the general judgment against the defendant corporation in the prior action could not be used to decide the issue of liability in the plaintiff's subsequent personal injury lawsuit against the same defendant, because the earlier judgment contained no specific findings and could have resulted from the trial court's determination that neither party was negligent, that both were, or that only the corporation was negligent. See also *Herzog*, 167 Ill. 2d at 297 (it is "error [to apply] collateral estoppel where it was impossible to determine on which issue the plaintiff prevailed in the previous case").

In the case at bar, both the appellate court majority and plaintiffs fail to identify the material and controlling factual finding that was conclusively resolved against Grefco in *Kessinger* and which is also the exact and controlling issue central to the instant litigation. The evidence in the *Kessinger* trial included testimony revealing that the plaintiff, a 15-year employee of UNARCO, had been exposed to dust from both natural and calcined diatomaceous earth. The general verdict did not, however, reveal whether the jury found that only calcined or only natural diatomaceous earth caused the plaintiff's illness, or whether both forms of the earth contributed to the plaintiff's pulmonary fibrosis. In the instant case the trial court ruled, and Grefco agreed, that the result in *Kessinger* precluded Grefco from asserting to the jury only that pulmonary fibrosis could *never* result from exposure to diatomaceous earth. Grefco did not violate this ruling and did not deny the possibility that a person could contract silicosis from inhaling dust from diatomaceous earth. The circuit court did not grant preclusive effect to the general verdict in *Kessinger*, however, on the separate and distinct issue of whether plaintiffs in the case at bar had sustained the type, intensity, and duration of exposure to diatomaceous earth that would result in a significant risk of disease. Nor did the circuit court prohibit Grefco from distinguishing in the instant case between the risks associated with calcined and natural diatomaceous earth, or between the relative risks of miners' and non-miners' exposure to diatomaceous earth. After reviewing the record we conclude that the circuit court's rulings on the scope of collateral estoppel were correct.

The appellate court merely pronounces that the evidence in *Kessinger* "indicated that plaintiff had much the same exposure [to diatomaceous earth dust] as did the male plaintiffs here." 273 Ill. App. 3d at 282.

However, we reject as unfounded the notion that the *Kessinger* plaintiff suffered "much the same" exposure as the male plaintiffs in the case at bar. The plaintiffs in both cases had different periods of employment during which they were exposed. They also had different duties and activities at the plant. The plaintiffs did not share medical histories or current medical conditions. Presumably, the appellate court would equate the instant plaintiffs' distinct circumstances and medical conditions with those of the plaintiff in *Kessinger* simply because the plaintiffs in the two lawsuits worked at the same UNARCO plant and were exposed at some time to diatomaceous earth supplied by Grefco. That the two cases may share general similarities does not support the conclusion that the *Kessinger* verdict worked an estoppel of the breadth imagined by the appellate court and plaintiffs in the case at bar.

The appellate court majority also implies error in certain remarks Grefco made during opening statement and in summation. These remarks underscored the great number of years of intensive exposure to natural diatomaceous earth that is required before silicosis would develop, most likely in the mining and milling settings as distinct from "end use" manufacturing plants. However, the record reveals that the parties engaged in extensive pretrial preparation of the case and presented, without objections from either side, detailed opening statements to assist the jury in understanding their respective positions. There is no indication in the record that the jury was confused or misled by the parties' arguments. Moreover, Grefco's opening remarks and its summation were supported by evidence properly admitted at trial. Grefco presented expert witnesses who stated their opinions that the type of exposure to natural diatomaceous earth occurring in the instant case was unlikely to produce disease and in fact had not

resulted in silicosis in plaintiffs. Plaintiffs presented their expert witness who expressed his belief that plaintiffs had both asbestosis and silicosis. Therefore, the jury was presented with evidence specific to the facts of the instant case. Some of the evidence was medical and scientific in nature, bearing on the health hazards associated with diatomaceous earth. Grefco was properly allowed to present evidence and argue that end users of natural diatomaceous earth ordinarily did not face a significant health hazard, particularly if they did not inhale the dust over a long period of time.

Because it is evident that the material issues of fact with respect to plaintiffs' alleged injuries were not adjudicated by the *Kessinger* case, Grefco should not have been barred from litigating or contesting whether a particular employee at the Bloomington plant was likely to develop silicosis under the specific circumstances of that employee's inhalation of diatomaceous earth dust. That a jury awarded damages to the *Kessinger* plaintiff, who sustained injuries following a lengthy exposure to fibrotic material including natural and calcined diatomaceous earth, bears little relevance to this or other litigation involving different plaintiffs with different disease pathologies, different exposure periods to diatomaceous earth, and different issues that might be presented in defense. Allowing plaintiffs in the instant case to benefit from another individual's recovery of damages under dissimilar circumstances is comparable to permitting patients of a doctor found liable for malpractice in one patient's surgery to estop the doctor from fully defending against malpractice suits of the other patients who had the same operation.

It is important to bear in mind that issues of causation in a personal injury or products liability case are fact-specific and of limited relevance beyond the circumstances of the particular litigation in which such issues

are resolved. See, *e.g.*, *Marlow v. American Suzuki Motor Corp.*, 222 Ill. App. 3d 722, 736-37 (1991), quoting *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St. 3d 193, 203, 443 N.E.2d 978, 987 (1983) ("It would not be prudent to raise a decision made by one jury in the context of one set of facts to the standard under which all subsequent cases involving separate underlying factual circumstances are judged"). Not all who are exposed to a substance that can cause pulmonary fibrosis develop a disease. Even if the type or duration of exposure is substantially the same, as where two individuals worked side-by-side doing the same tasks for the same length of time, one may remain disease free while the other does not.

Problems inherent in attempting to apply collateral estoppel in "exposure" cases are illustrated in *In re Agent Orange Product Liability Litigation*, 818 F.2d 145 (2d Cir. 1987). In that case, a plaintiffs' class of Vietnam War veterans claiming exposure to Agent Orange asserted a common question regarding whether Agent Orange could cause disease. According to plaintiffs' argument, the jury could decide "generic causation," *i.e.*, whether Agent Orange could cause disease, as an issue common to all class members' cases. The federal court rejected the argument, noting that the "relevant question *** is not whether Agent Orange has the capacity to cause harm, the generic causation issue, but whether it did cause harm and to whom. That determination is highly individualistic ***." *In re Agent Orange*, 818 F.2d at 164-65. Similarly, in the case at bar the relevant question is not whether natural diatomaceous earth has the capacity to cause harm or whether it did cause or might have caused harm to another plaintiff, but whether it did in fact cause harm to *these* plaintiffs. See also *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 45-48 (1987); *Morrissy v. Eli Lilly &*

*Co.*, 76 Ill. App. 3d 753, 761 (1979) (mere exposure to potentially toxic product does not prove that the substance caused disease).

Finally, we note that in *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882 (1992), relied upon by the circuit court in the instant case and which the dissenting justice found controlling, Grefco was a defendant and third-party plaintiff and UNARCO was a third-party defendant in litigation involving the injured plaintiffs' exposure to asbestos and diatomaceous earth. In the section of the *Betts* court's opinion relevant to the doctrine of collateral estoppel, the appellate court held that the trial court erred in granting broad preclusive effect to the general verdict in *Kessinger*, which thereby impaired Grefco's right to present a meaningful defense. Specifically, the circuit court in *Betts*, attempting to apply the *Kessinger* verdict to the case before it, erroneously instructed the jury that they were to apply as binding certain "findings of fact and law." These findings included the statement that fibrosis of the lungs is caused by diatomaceous earth, that Grefco knew of the risks, and that Grefco "was negligent in failing to warn of the hazards of exposure to diatomaceous earth, and in particular, the risk of fibrosis of the lungs by the failure to place warnings on bags of diatomaceous earth supplied to Bloomington from 1953 to 1967." *Betts*, 225 Ill. App. 3d at 926. The appellate court rejected the circuit court's use of collateral estoppel and explained at length why the *Kessinger* verdict was not preclusive of many of the issues presented in the *Betts* trial, including the failure to warn theory. *Betts*, 225 Ill. App. 3d at 927-28.

Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment. See, *e.g.*, *Lange*, 44 Ill. 2d at 75. Even where the

threshold elements of the doctrine are satisfied, and an identical common issue is found to exist between a former and current lawsuit, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped. For example, in *Van Milligan*, 158 Ill. 2d 85, this court acknowledged that the threshold requirements might have been satisfied in a case in which a Chicago police officer was fired after he was found liable for violating the civil rights of a citizen in connection with an arrest. This court observed that "it would be highly unfair to the police officer *** if offensive collateral estoppel effect were given to the factual findings of the Federal civil rights suit in this subsequent disciplinary proceeding in which the police chief seeks the officer's discharge. We believe that the police officer's substantial interest in a full hearing, where the grounds for any discipline imposed will be *fully and fairly* litigated, militate against the application of principles of collateral estoppel in this case." *Van Milligan*, 158 Ill. 2d at 96-97. See also *In re Owens*, 125 Ill. 2d at 400-01.

We conclude that the circuit court's ruling on the estoppel effect to be accorded the *Kessinger* verdict was well within the scope of its discretion. Accordingly, we reverse the appellate court's judgment granting plaintiffs a new trial and affirm the circuit court's judgment on the jury's verdict.

> *Appellate court judgment reversed;*
> *circuit court judgment affirmed.*

JUSTICE HARRISON, specially concurring:

I agree with the result reached by the majority for the reasons stated in part I of its analysis. Because the jury determined that the plaintiffs did not suffer from silicosis, the appellate court should not have reversed and remanded for a new trial based on the circuit court's

ruling on collateral estoppel. The collateral estoppel question had no effect on the outcome of the case and therefore should not have been addressed by either the appellate court or this court.